J-A09013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| D.D. | |
| Appellant | No. 1347 MDA 2016 |

Appeal from the Order Entered July 21, 2016
In the Court of Common Pleas of Union County
Civil Division at No(s): CV 16-204

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 26, 2017**

D.D. ("Mother") appeals from an order entered on July 21, 2016, in the Union County Court of Common Pleas granting the petition by her daughter, S.D. ("Daughter"), for a protection from abuse ("PFA")[1] order.  On appeal, Mother raises the following four issues:  (1) whether the trial court erred in not allowing Mother to testify telephonically; (2) whether the court erred in finding that Daughter met her burden of proof; (3) whether the court erred in not allowing certain relevant testimony; and (4) whether the court erred in issuing a protective order for the statutory maximum three years, including a weapons relinquishment order.  Based on the following, we affirm in part and reverse in part.

---

[1] **See** 23 Pa.C.S. §§ 6101–6122.

The facts and procedural history are as follows. On April 7, 2016, Daughter filed a petition for a PFA order against Mother. Daughter is a 21 year-old resident of Pennsylvania and a student at Bucknell University. The trial court issued a temporary PFA order and scheduled a final PFA order hearing for April 18, 2016. Mother is a California resident and requested a continuance due to the lack of proper service. The court granted her request, and continued the hearing to May 19, 2016. A day before the hearing, Mother again requested another continuance for medical reasons. The court continued the hearing until July 20, 2016. Again, a day before that hearing was scheduled, and due to her medical issues and the cost of travel, Mother requested she be permitted to testify telephonically at the July 20, 2016 hearing. The court denied Mother's request.

On July 20, 2016, Daughter, Daughter's counsel, and Mother's counsel appeared at the hearing. Daughter took the stand and testified to the following incident that took place on March 28, 2016, which precipitated her filing the PFA petition:

> Actually, the Monday after Easter in March my class had ended a little early, and I was walking back towards my building when I saw a car get into a small fender bender. I stopped and looked up trying to see who was involved and finding my stepfather driving a car that had backed into another vehicle; and immediately upon recognizing him, I backed away and saw my mom come out of the passenger's side and start walking towards me and start screaming, telling me to come see her immediately; that I was in so much trouble; and that I had no right to not be speaking to her and that she was going to come get me. And I was -- turned on my heels immediately and ran away from her.

I ran into an academic building screaming for help. (Pause.) Sorry. That's awful. Thank you. And then ran past a professor who kind of got in her way and then out of the building down Fraternity Road, saw a friend from afar and asked him to let me into his building because Bucknell has a pass system -- excuse me -- that let's [sic] students in and out of buildings.

He unlocked a side door where the stairwell is, and then I caught my breath as I stood there with my backpack and a package I had picked up at the mailroom. And he had to calm me down, tried to see what was going on. And this was in Chi Phi Fraternity; and unbeknownst to me, their doors are unlocked for lunch period. And she had been stalking outside that door while I tried to catch my breath and figure out what to do and had called Public Safety.

She then ran around the building and found a way in, I don't know how, and found me in the stairwell. And that's when my friend had backed off; and she grabbed me by the shoulders, pushed me against the door next to where the exit door was. And I started leaning towards the door to pull away, and she grabbed me back and pushed me against that same wall. Then as I pushed away, she grabbed my sleeve and pulled me basically in opposite directions.

We finally made it outside. She had like ripped my forearm, had hit me in my side; and as I go away, I'm swiping towards my arm. And then by that point, my then best friend had pulled up, found us, and got between her and I. She lunged at him, and I ran away and he then ran away with me.

Then I had called Public Safety and got an officer on the phone, and they met me outside of McDonald's after she had followed us to McDonald's and stalked outside the door.

N.T., 7/20/2016, at 5-6. Daughter also said that prior to the March incident, she informed Mother that she no longer wished to have contact with her, and had changed her phone number. *Id.* at 7. Daughter stated that in response, Mother made threats to Daughter's friends if they refused to

provide Daughter's current phone number. *Id.* at 12. Daughter also discussed prior incidents of Mother's emotional and physical abuse, including the first time she realized that Mother's "parenting was not appropriate." *Id.* at 8-9.

Following direct examination, Mother's counsel offered to provide telephonic testimony from a psychologist that Mother was not a danger to Daughter. *Id.* at 15. The court determined this testimony was not relevant to whether the PFA order should be entered because the focus was on Daughter, and not Mother, and whether Mother had committed acts of abuse as defined by the statute. *Id.* at 15-16. On cross-examination, the court denied a line of questioning regarding an episode that occurred during Daughter's sophomore year in high school, in which Mother had thrown Daughter out of the home, instigating custody proceedings between Mother and Daughter's biological father. *Id.* at 20-21. Counsel suggested this line of questioning demonstrated that Daughter had run away before and why Mother was justified in showing up at campus unannounced. *Id.* at 21. The court determined this line of questioning was irrelevant, noting there was no good faith exception to the definition of abuse in the statute. *Id.* Additionally, counsel tried to introduce text messages allegedly received on a phone Daughter had abandoned at Mother's home. *Id.* at 25. The messages were purportedly from Daughter's classmates requesting to

purchase drugs. *Id.* at 26. The court determined this evidence was not relevant either. *Id.*

At the conclusion of the hearing, the court found, based on the testimony provided, Daughter had established by clear and convincing evidence that she was entitled to entry of a final PFA order because Mother's actions met the criteria for "abuse" under the PFA Act. *Id.* at 32. A final PFA order was entered that day and is set to expire on July 19, 2019.[2] Not only did the order prohibit Mother from having any contact with Daughter, but *inter alia*, it mandated she was "prohibited from possessing, transferring or acquiring any firearms for the duration of this order." Order, 7/21/2016, at 3. Mother's timely appeal followed.[3]

On appeal, Mother presents the following issues for our review:

1. Whether the trial court erred in not allowing [Mother] testify telephonically?

2. Whether the trial court erred in finding that [Daughter] met her burden of proof?

3. Whether the trial court erred in not allowing relevant testimony?

_____

[2] The order was timestamped the following day.

[3] Although the trial court did not order Mother to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b), she filed a concise statement on August 15, 2016, the same day she filed her notice of appeal. The court issued an opinion under Pa.R.A.P. 1925(a) on September 27, 2016.

4. Whether the trial court erred in issuing a protective order for the statutory maximum three years including a weapons relinquishment order?

Mother's Brief at 4.

> Our standard of review is well-established: "[i]n the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa.Super. 2014). This Court has emphasized that "[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa.Super. 2008).

***T.K. v. A.Z.***, 157 A.3d 974, 976 (Pa. Super. 2017).

In Mother's first issue, she complains the "trial court committed reversible error and denied [her] proper due process by not permitting her to testify telephonically at the final PFA hearing on July 2[0], 2016." Mother's Brief at 11. She notes "[t]elephonic testimony is generally permitted in Pennsylvania upon a showing of good cause," and generally, "there are no prohibitions in the Protection from Abuse statute itself from allowing a witness to testify telephonically."[4] ***Id.*** Mother states she requested that "she be permitted to testify via telephone due to continuing

---

[4] She points to Pennsylvania Rule of Civil Procedure 1930.3 to support her contention that a party or witness may be deposed by telephone upon a good cause show. Mother's Brief at 11. Additionally, Mother relies on decisions by the Commonwealth Court of Pennsylvania as well as federal court cases. ***See i.e.***, ***Piccolella v. Lycoming Cty. Zoning Hearing Bd.***, 984 A.2d 1046 (Pa. Commw. 2009); ***A.S. v. William Penn Sch. Dist.***, No. Civ.A. 13-2312, 2014 WL 1394964 (E.D. Pa. Apr. 10, 2014).

back issues and due to the onerous and vexatious costs of traveling from California to Pennsylvania." *Id.* at 12. Moreover, she alleges:

> On July 20, 2016, prior to the commencement of the hearing, the lower court denied [Mother]'s Motion for Telephonic Testimony without comment or explanation. In the lower court's September 20, 2016 advisory opinion, the court stated it did not believe good cause was shown for telephonic testimony, that the court had concerns about not being able to observe [Mother] while testifying and at the counsel table, and that a continuance could have been requested to enable [Mother] to be present at the hearing but was not requested. These are valid concerns of a trial court, but provide absolutely no justification to exclude [Mother] from the hearing as its denial did.
>
> Based upon the fact the proceedings had been continued twice, but faced with continuing, documented medical issues and high costs of travel, [Mother] believed telephonic testimony was the most efficient manner to exercise her rights. Pursuant to [Mother]'s May 19, 2016 Motion for Continuance, [Daughter] did not concur with a continuance but did concur with telephonic testimony. In light of this previous concurrence with telephonic testimony and lack of a response for the July 19, 2016 Motion, [Mother] further believed that it would be more appropriate for telephonic testimony.

*Id.* at 12-13 (emphasis removed). Mother concludes she "was denied the opportunity to participate in the hearing fully and denied the fundamental principles of due process[.] *Id.* at 13.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." ***Lanza v. Simconis***, 914 A.2d 902, 905 (Pa. Super. 2006). 23 Pa.C.S § 6107 sets forth, in pertinent part, the following regarding the procedure for PFA hearings:

**§ 6107. Hearings**.

- 7 -

> **(a) General rule**.-Within ten business days of the filing of a petition under this chapter, a hearing shall be held before the court, at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence. The court shall, at the time the defendant is given notice of the hearing, advise the defendant of the right to be represented by counsel, . . . and that any protection order granted by a court may be considered in any subsequent proceedings under this title[.]

23 Pa.C.S. § 6107(a). "In determining whether a hearing pursuant to Section 6107(a) comports with due process, this Court has held that the parties must, at a minimum, have the opportunity to present witnesses, testify on one's behalf, and cross-examine the opposing party and his/her witnesses." *Lanza*, 914 A.2d at 906.

> Here, the court found the following:

> The court denied the [m]otion for telephonic testimony because the court was not satisfied that good cause had been shown. The court had concerns about not being able to observe [Mother] both while testifying and at the counsel table. Counsel had the option to request a continuance of the hearing to enable his client to appear in person, but did not do so.

Trial Court Opinion, 9/27/2016, at 1-2.

We agree with the court's finding. Particularly, we conclude the trial court did not abuse its discretion in denying Mother's motion to testify telephonically where: (1) the final PFA hearing was continued twice before at the request of Mother; (2) Mother waited a day before the July 2016 hearing to file the motion at issue; (3) Mother did not file a third motion for a continuance, which it appears the trial court would have granted; and (4) the court was concerned about not being able to view Mother in person. We

- 8 -

note Mother was not denied the opportunity to testify, present witnesses, or cross-examine witnesses. She was merely denied the ability to testify telephonically. Accordingly, her first argument fails.

Next, Mother claims the court erred in finding Daughter met her burden of proof under the PFA Act "that an act of abuse was committed and/or that [Daughter] had an objective and reasonable fear of bodily injury." Mother's Brief at 14. Mother asserts that prior to the March 28, 2016, incident, Daughter did not present any evidence of physical abuse. *Id.* at 15. Moreover, with respect to that March attack, Mother states:

> [Daughter] continued to evade [Mother] across campus until her mother attempted to grasp her by the arm and speak with her. [Daughter] claims that [Mother], in her attempts to restrain or grab her, had caused bruising. [Daughter] did not provide any medical or photo evidence of her alleged bruising the day of the hearing. [Daughter] testified [Mother] appeared to be attempting to restrain or "catch" her, rather than describing it as attempting to hit or injure her.
>
> [Daughter] conclusorily [sic] stated she personally thought her mother was an emotional and physical threat to her, but did not testify at any point during the proceedings that she had fear of her mother, other than not wanting her mother to contact her directly or indirectly. [Daughter] testified regarding two alleged stories involving getting yelled at and/or grabbed by [Mother] when she was in high school and middle school. [Daughter] did not testify to any [Children and Youth Services], criminal, or custody proceedings that were precipitated from these alleged events that took place when she was a minor.
>
> …
>
> No evidence demonstrated [Daughter's] stated fear wa[s] objectively reasonable. She pointed to no instances of evidence of actual abuse, just her own irrational fear. That is insufficient under the PFA statute.

*Id.* at 16.

With respect to a sufficiency claim, we note the following:

When a claim is presented on appeal that the evidence is not sufficient to support an order of protection from abuse, the reviewing court must "view the evidence in the light most favorable to the verdict winner, granting her the benefit of all reasonable inferences." *Fonner v. Fonner*, 1999 PA Super 122, 731 A.2d 160, 161-63 (Pa. Super. 1999). The reviewing court then determines whether the evidence was sufficient to sustain the trial court's conclusions by a preponderance of the evidence. The preponderance of the evidence standard is "defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *Raker v. Raker*, 2004 PA Super 107, 847 A.2d 720, 724 (Pa. Super. 2004) (citation omitted).

*Mescanti v. Mescanti*, 956 A.2d 1017, 1020 (Pa. Super. 2008).

"Credibility of the witnesses and the weight accorded their testimony is within the exclusive province of the judge as fact finder." *Id.* at 1019-1020 (citation omitted).

The PFA Act defines "abuse," in relevant part, as follows:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury[.]

\*\*\*

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal

- 10 -

prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a)(1), (5).

Turning to the present matter, at the conclusion of the PFA hearing, the trial court found the following:

> Based on the testimony presented today, the Court finds that [Daughter] has established by clear and convincing evidence that she is entitled to the entry of a Protection from Abuse Order.
>
> The definition of abuse as set forth in Section 6102 of the statute includes attempting to cause or intentionally, knowingly, or recklessly causing bodily injury. In addition, the course – there's a further definition that engaging in a course of conduct, repeatedly committing acts under circumstances which place the person in a reasonable fear of bodily injury.
>
> We do believe that [Daughter]'s testimony meets those criteria.

N.T., 7/20/2016, at 32.

Contrary to Mother's argument, a review of Daughter's testimony does establish that on the day of the incident at Bucknell, Mother engaged in a course of conduct that placed Daughter in reasonable fear of bodily injury where: (1) Mother appeared on Daughter's campus with no forewarning; (2) she yelled at Daughter and informed her that she was in trouble; and (3) she chased after Daughter and followed her into a building when Daughter tried to run away from the scene. *Id.* at 5-6. Moreover, Mother caused bodily injury as Daughter testified, "[Mother] grabbed me back and pushed me against [the] wall. Then as I pushed away, she grabbed my sleeve and

pulled me basically in [the] opposite direction[]. We finally made it outside. She had liked ripped my forearm, had hit me in the side[.]" *Id.* at 6. Daughter testified Mother continued to stalk her after she contacted campus police and met with them. *Id.* Additionally, she stated Mother had a history of emotionally and verbally abusing her to the point on one occasion, of even abandoning her on a highway. *Id.* at 9. Lastly, Daughter testified:

> I had the support of friends and family, and I want to be able to live in that feeling while I pursue work here; and I don't think that I should feel threatened by my mom's presence or by her trying to contact me through friends or other people while I do that. I think she's an emotional and physical threat to me.

*Id.* at 10.

While Mother attempts to re-weigh the evidence in her favor, Daughter's testimony, which the court, sitting as the fact-finder, found credible, is sufficient under Section 6102(a)(1) and (5). Accordingly, we conclude the record supports the court's determination that Mother's actions met the criteria for "abuse" under the PFA Act. *See Thompson v. Thompson*, 963 A.2d 474, 478 (Pa. Super. 2008) (PFA order against father upheld where (1) one son testified father used drugs, yelled at him and chased him in his car when older son refused to get in the car, and that he was afraid of father; (2) the other son testified father pushed and shoved him, frequently threatened to hurt him, and that he was afraid of father; and (3) mother testified father grabbed her in a sexually inappropriate way one

time when she came to his house to pick up the children). Therefore, her second issue also fails.

In Mother's third argument, she claims the court erred in excluding certain evidence and testimony. Mother's Brief at 17.

We are guided by the following: "The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." *Commonwealth v. Ballard*, 80 A.3d 380, 392 (Pa. 2013), *cert. denied*, 134 S.Ct. 2842 (U.S. 2014). "Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002), *cert. denied*, 539 U.S. 919 (2003), *quoting* *Commonwealth v. Stallworth*, 781 A.2d 110, 117-18 (Pa. 2001).

First, she states the court improperly excluded the testimony of her expert witness, Dr. Stephen Marmer, who she attempted to call regarding his opinion that Mother was not a present or future danger to Daughter, as irrelevant. *Id.* Mother argues,

> If the primary goal of the PFA Act is the prevention of future physical abuse and Dr. Marmer was to opine as to [Mother]'s propensity for such, his testimony was not only relevant but extremely significant information that the trier of fact could have used in making their ultimate decision. Dr. Marmer's testimony would have been especially significant in the context of the

objective reasonableness of [Daughter's] alleged fear, which, as previously mentioned, is an important determination for the trial court to make.

*Id.* at 18.

By way of background, Mother's counsel offered to introduce telephonic testimony from Dr. Marmer, a psychologist, who was familiar with Mother and "would be able to opine from a medical perspective and a psychological perspective … that [Mother's] not a danger to her child." N.T., 7/20/2016, at 15. The court denied counsel's request, stating: "[S]ince the focus is on [Daughter] and not your client and whether your client has committed acts of abuse as defined in the statute and the effect on [Daughter], whether your client constitutes a danger to her daughter is not relevant to this Court's determination whether a PFA order should be entered[.]" *Id.* at 15-16.

We concur with the trial court's determination. The expert's testimony as to whether Mother posed a future threat to Daughter would not have been relevant to determine whether Mother "attempt[ed] to cause or intentionally, knowingly or recklessly caus[ed] bodily injury" to Daughter on March 28, 2016, which was the focus of the PFA petition. *See* 23 Pa.C.S. § 6102(a). Accordingly, we detect no abuse of discretion on the part of the trial court in failing to admit the expert's testimony.

Second, Mother complains the court erroneously excluded relevant background information and text messages from Daughter's old cellular phone. Mother's Brief at 18. Specifically, she avers:

> In the instant case, [she] was not able to be present on the day of the PFA hearing, nor was she permitted to testify telephonically. Due to these circumstances, the further relevant background information was only going to be elicited through thorough cross-examination of [Daughter]. Thorough and flexible cross-examination was not only significant, but also necessary to properly defend [Mother]'s case.
>
> [Daughter] was cross-examined on she and her mother's background relationship, as [Daughter] described alleged past instances of abuse. It was also attempted to cross-examine [Daughter] as to text messages that were received on her old phone she left with her mother. The offer of proof was to illustrate why [Mother] showed up unannounced on the day of the incident. The court needed background information in order to properly evaluate the entire situation and the reasonableness of the alleged victim's fear. If the trial court were to have fully evaluated the background of the parties, it may have concluded the past instances of alleged "abuse" were exaggerated based upon the strong bond between the parties. If the trial court were to have allowed cross-examination based upon the text messages, it may have found that [Daughter] was running away from [Mother] due [to] the lack of desire to discuss the veracity of drug use and sale, rather than an alleged "fear" of [Mother].

***Id.*** at 19-20.

We note Mother does not point to where in the notes of testimony with respect to the evidence she is referencing. Nevertheless, we presume Mother is referencing the following: (1) counsel attempted to introduce

- 15 -

evidence that Daughter "ran away"[5] from her mother's home in high school to show Mother's perspective as to why she would arrive at her daughter's school unannounced;[6] and (2) counsel attempted to introduce text messages from a phone that Daughter had left in Mother's custody to show why Daughter may have run away from home and stopped contacting Mother, because the messages allegedly revealed several of Daughter's classmates requested to purchase drugs from her.[7]

With respect to the former instance, the court opined that "the PFA Act does not lead me to conclude that there's some good faith exception to the definition of abuse in the statute." N.T., 7/20/2016, at 21. With regard to the later evidence, the court found the text messages were not relevant. *Id.* at 26.

We agree with the court's conclusions. It is clear both pieces of evidence are not relevant to the matter at hand regarding whether or not Mother did, indeed, abuse Daughter in March of 2016. Accordingly, we find the trial court did not abuse its discretion in failing to admit evidence

---

[5] Daughter testified she was kicked out of her mother's home. N.T., 7/20/2016, at 20.

[6] *Id.* at 20-21.

[7] *Id.* at 25-26.

regarding background information and text messages from Daughter's old cellular phone.

Lastly, Mother argues the trial court erred "in issuing a full three year protective order, including a weapon relinquishment." Mother's Brief at 20. Specifically, Mother contends the "maximum three year protection does not comport with the facts of this case" and there was no evidence that weapons were used by her at any time. *Id.* at 21.

In **Snyder v. Snyder**, 629 A.2d 977, 984 (Pa. Super. 1993), a panel of this Court opined that the PFA Act,

> anticipates that a trial court possesses discretion in choosing between the remedies the Act affords. The statute states that any order or consent agreement sanctioned by the trial court *may* include several delineate remedies. 23 Pa.C.S.A. § 6108. The use of the word "may," and the several remedies, some of them alternative remedies, which the Act provides, indicates that the legislature believed the choice of a remedy was within the discretion of the trial court. Accordingly, we will review the trial court's determination as to an appropriate remedy in a Protection From Abuse Act case should be reviewed only for an abuse of discretion.

*Id.* at 984.

With respect to the three-year period, the court found "based on the testimony presented, that an order for the statutory maximum of three years was both necessary and appropriate." Trial Court Opinion, 9/27/2016, at 2. We concur with the court's finding and note that Mother's argument, which amounts to a bald assertion, does not persuade us otherwise.

With regard to the weapon relinquishment, we note the PFA Act grants the trial court the power to require a defendant to relinquish her property:

> **(a) General rule**. The court may grant any protection order …to bring about a cessation of abuse of the plaintiff or minor children. The order or agreement may include:
>
> …
>
> (7) Ordering the defendant to temporarily relinquish to the sheriff the defendant's weapons which have been used or been threatened to be used in an incident of abuse against the plaintiff or the minor children and prohibiting the defendant from acquiring or possessing any other weapons for the duration of the order[.]

23 Pa. C.S. § 6108(a)(7).[8]

Here, there is no evidence that Mother used or threatened to use a weapon in accordance with Section 6108 that would require it to be relinquished. It also merits mention that in her appellee brief, Daughter notes she "did not request that the trial court order [Mother] to relinquish her firearms in her Petition for a PFA Order" and she "does not oppose [Mother]'s request that this particular restriction be removed from the trial court's Order." Daughter's Brief at 29. We are constrained to agree and find the trial court abused its discretion in requiring Mother to relinquish her weapons. Accordingly, we reverse the trial court's July 20, 2016, order with

_____

[8] **_See also Kelly v. Mueller_**, 861 A.2d 984, 991 (Pa. Super. 2004), _vacated on other grounds_, 912 A.2d 202 (Pa. 2006).

respect to this issue and remand for further proceedings consistent with this memorandum.[9]

Order affirmed in part and reversed in part. Matter remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/2017

---

[9] Furthermore, as Daughter points out, the question of whether Mother may be subject to certain restrictions on her possession of firearms under federal law is an issue that is outside of the scope and jurisdiction of this appeal. **See** Daughter's Brief at 29 n.5; **see also** 18 U.S.C. § 922(g)(8); **United States v. Reddick**, 203 F.3d 767, 771 (10th Cir. 2000).