J-S11038-17

2017 PA Super 67

| T.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.Z. | : | |
| | : | |
| Appellant | : | No. 1261 WDA 2016 |

Appeal from the Order Entered August 3, 2016
In the Court of Common Pleas of Cambria County
Civil Division at No(s): 2016-2624

BEFORE: OLSON, J., RANSOM, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED MARCH 14, 2017**

A.Z. ("Appellant") appeals the order of the Court of Common Pleas of Cambria County granting the petition for Protection from Abuse ("PFA") filed by his former wife, T.K. ("Appellee"). After careful review, we affirm.

Appellant and Appellee were married for eleven years before they separated in March 2009. The couple share custody of their minor children. As the parties had a strained relationship following their separation, they exchanged custody of the children at a local police station and were required by a court order to communicate through a court-monitored application. On July 20, 2016, Appellee filed for the PFA against Appellant. On August 3, 2016, the lower court held a PFA hearing at which both parties testified.

_____

[*] Former Justice specially assigned to the Superior Court.

Appellee alleged that Appellant had harassed and stalked her throughout the seven years following their separation; Appellee identified exact dates of recent incidents as recorded in her diary. Appellee accused Appellant of putting a nail in the tire of her car on July 9, 2016, while she took their children to their therapy appointment. Although Appellant was not allowed to contact Appellee by a previous court order, Appellant would have the children and other individuals "scream stuff into the phone" to Appellee on repeated occasions. N.T. Hearing, 8/3/16, at 5-6.

In addition, Appellee testified to numerous instances in which she felt that Appellant was stalking her. Appellee contended that Appellant would follow her in her vehicle almost every day, drive past her, and honk his car horn. Appellee noticed numerous times that Appellant was following her around the local grocery store. Appellee claimed that, at the local football game, Appellant would follow her when she would go to the bathroom as well as sit near her in the stands and make comments about her within earshot. On another occasion, Appellee and the children detected Appellant watching them and hiding while they were sled riding. Appellee asserted that Appellant would constantly call their children, tell them he was near Appellee's home, and honk his car horn as he passed by. As a result of Appellant's behavior, Appellee expressed fear and concern for her safety.

Appellant testified and denied all of Appellee's allegations, but offered no explanation or any specific response to Appellee's assertions. At the conclusion of the hearing, the lower court entered an order granting Appellee

the PFA against Appellant. In doing so, the lower court found Appellee did not present sufficient evidence to show that Appellant was responsible for the nail found in her car tire. Nevertheless, the lower court found Appellee testified credibly to Appellant's behavior, which it characterized as stalking and harassment. The lower court indicated that its order would be in effect for the statutory period of three years. Appellant filed this timely appeal and complied with the lower court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises two issues for our review on appeal:

(1)  Whether the entry of a Protection from Abuse Order and finding of abuse following hearing [sic] is contrary to the evidence presented and as such an error of law?

(2)  Whether the entry of a Protection from Abuse Order following hearing for a period of three (3) years is contrary to the evidence presented and as such an abuse of discretion?

Appellant's Brief, at 4.

Our standard of review is well-established: "[i]n the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa.Super. 2014). This Court has emphasized that "[t]he purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa.Super. 2008). The

PFA Act, 23 Pa.C.S. §§ 6101-6122, defines "abuse," in relevant part, as follows:

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
> ***
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a).

On appeal, Appellant concedes that he acted in the manner described by Appellee at the PFA hearing, but argues that his behavior, while it may be considered "rude," "fall[s] far short of the definition of abuse as set forth in the statute." Appellant's Brief, at 11. Moreover, Appellant asserts that Appellee "never testified to being afraid of or even having a fear of Appellant." Appellant's Brief, at 13. We disagree.

Appellant's behavior falls squarely within the definition of abuse in Section 6102(a) which includes "[k]nowingly engaging in a course of conduct or repeatedly committing acts toward another person, *including following the person*, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. 23 Pa.C.S. § 6102(a). Appellant does not contest Appellee's assertions that he repeatedly followed her in his

- 4 -

vehicle, in the local grocery store, at sporting events, and in other locations. Appellant does not deny that he kept track of Appellee's whereabouts, and constantly drove past her home and honked the car horn. Appellant concedes that he tried to yell to Appellee while talking to their children on the telephone despite a court order requiring him to communicate through a court-monitored application. This course of conduct constitutes abuse within the definition set forth under the PFA Act.

We also reject Appellant's assertion that Appellee never testified to being afraid of or even having a fear of Appellant. At the hearing, Appellee testified as follows:

> You don't know what it's like to walk in a store and wonder is this the time he does something, **is this going to be the time I get shot**. I can't sleep. My family is not safe. People walk with me to and from my car at work. Why can't I go in the store and shop without him being behind me making noises or letting me know he's there[?]
>
> **When [Appellant] gets angry, I feel threatened.** When [Appellant] doesn't like something that happens in court, harassment happens. There's a pattern before and after hearings. When he doesn't like something the Court does, you know, he gets other people to engage in these behaviors with him.
>
> ***
>
> What am I to [Appellant]? If he doesn't follow the Court Orders and he doesn't care when people tell him to stop, what am I to him? **Why wouldn't he hurt me?** This [PFA petition] is the only thing, Your Honor, that has given me peace for the last three weeks. My kids are doing better. They're sleeping. They're not upset. It's stressful when someone is screaming into the phone. We don't act like that at my house. It's stressful, and this is the only thing that has given me peace. This is the most peace I have had in seven years. And it needs to stop.

N.T. Hearing, 8/3/16, at 15 (emphasis added). Although Appellee did not use the specific word "fear," she clearly testified to her deep concern for her safety, opining that Appellant's behavior would eventually escalate from repetitive stalking to seeking to cause her bodily harm. Accordingly, we conclude there is sufficient evidence to support to justify the entry of the PFA order as Appellant engaged in a repeated course of conduct which placed Appellee in reasonable fear of bodily injury. *See* 23 Pa.C.S. § 6102.

Appellant also asserts that the lower court abused its discretion as the length of the PFA order is "excessive." Appellant's Brief, at 15. However, other than this bald, one-sentence assertion, Appellant offers no authority or analysis to support this claim. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 604 Pa. 176, 191, 985 A.2d 915, 924 (2009) (citations omitted). As a result, we find this argument is waived for lack of development.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/14/2017