J-S75029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.B.K. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.E.L. | : | |
| | : | |
| Appellant | : | No. 1286 WDA 2019 |

Appeal from the Order Entered July 18, 2019,
in the Court of Common Pleas of Mercer County,
Civil Division at No(s): 2019-2228.

BEFORE: STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 13, 2020**

In this matter, M.E.L. (Father) appeals from the final Protection From Abuse (PFA) order, which M.B.K. (Mother) requested on behalf of herself and the parties' three-month-old son E.H.L. (Child), pursuant to the PFA Act, 23 Pa.C.S.A. §§ 6101-6122. Father argues there was insufficient evidence to support the entry of the PFA order. After review, we affirm.

The trial court summarized the facts based on the testimony received from the parties during the final PFA hearing on July 18, 2019 as follows:

> A temporary protection from abuse order was granted for Mother and the infant child on July 11, 2019 [by the trial court] barring Father from any contact or any custody or visitation rights with Child and Mother.
>
> The final protection from abuse order entered on July 18, 2019 granted physical custody of the infant child to Mother

---

[*] Retired Senior Judge assigned to the Superior Court.

and partial custody to Father subject to all [his partial custody] being supervised as may be agreed upon by the parents. Mother was also granted the right to deny such visitation as she saw fit, subject to Father's right to request the trial court to review such denial.[1]

Mother's testimony at the [final PFA] hearing established that Father had on May 22, 2019 threatened Mother and her family, with whom Mother and [Child] resided. Father's threats included that he, his family and his friends, as well as people that he controlled, were going to beat Mother; beat her family; that she needed to watch her back; and that he would take Child away. He also posted a snapchat of himself with a gun.

Mother's testimony also established that Father had directed acts of violence against her in the past by hitting her in the face. Mother's testimony also established that she was aware that Father had a gun; and that he had told her he wished she had "fucking died during childbirth," which was approximately two weeks prior[.]

Father admitted at the [final PFA] hearing that he had told Mother he wished she had "fucking died during childbirth." Father, however, denied that he had made any threats to Mother or to her family, and denied that he claimed to have a gang of people that he could control. He did admit that he had a gun. Father also denied that he had ever struck Mother in the face.

Father's threats to beat Mother, and her family; his threats that his family and friends would beat her and her family; and that he had people he could control to beat Mother; that she needed to watch her back; his past violence against her by striking her in the face; and his wish for her death, all caused Mother to have a reasonable fear of imminent serious bodily injury.

_____

[1] Notwithstanding the court's characterization of Mother's custody arrangement as "primary," the court effectively awarded Mother sole custody, because the order grants her the authority to withhold Child from Father as she sees fit. However, we note that this provision is only temporary, and that either party may initiate custody proceedings. And we observe that Father does not appeal this aspect of the order.

Trial Court Opinion, 9/18/19, 2-3 (superfluous words omitted).

Father timely filed this appeal, wherein he raises one issue for our review:

> Did the [trial court] err in finding by a preponderance of the evidence that [Father] placed another in reasonable fear of imminent serious bodily injury[?]

Father's Brief at 6.

In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. ***Boykai v. Young***, 83 A.3d 1043, 1045 (Pa. Super. 2014) (citation omitted). When deciding with a sufficiency challenge under the PFA Act, we review the evidence in the light most favorable to the petitioner and, granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. ***Custer v. Cochran***, 933 A.2d 1050, 1058 (Pa. Super. 2007) (*en banc*). Moreover, in making this assessment, the Court must defer to the credibility determinations of the trial court. ***Id.*** "[T]he preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." ***Raker v. Raker***, 847 A.2d 720, 724 (Pa. Super. 2004) (citation omitted).

"The [PFA] Act was created to protect the victims of domestic violence from their abusers. Its goal is not punishment of abusers for past violent behavior, but advance prevention of physical and sexual abuse." ***Burke ex***

***rel. Burke v. Bauman***, 814 A.2d 206, 208 (Pa. Super. 2002) (citations and internal quotations omitted). Section 6102(a) of the PFA Act defines "abuse" as:

> ( [1] ) intentionally, knowingly, or recklessly causing bodily injury; ( [2] ) placing another in reasonable fear of imminent [serious] bodily injury; ( [3] ) infliction of false imprisonment; ( [4] ) physically or sexually abusing minor children; or, ( [5] ) knowingly engaging in a course of conduct or repeatedly committing acts towards another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

***Id***. (citing 23 Pa.C.S. § 6102(a)).

Actual physical harm is not a prerequisite for the entry of a PFA order. ***Fonner v. Fonner***, 731 A.2d 160, 163 (Pa. Super. 1999). Rather, the victim need only be in reasonable fear of imminent serious bodily injury. ***Id***. Thus, in a PFA hearing, the trial court's objective is to determine whether the victim is in reasonable fear of imminent serious bodily injury, and the intent of the alleged abuser is of no moment. ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1263 (Pa. Super. 2008). Finally, a petitioner need not specifically testify she was in fear, if the totality of the circumstances establishes the petitioner was concerned for her safety. ***See T.K. v. A.Z.***, 157 A.3d 974, 978 (Pa. Super. 2017).

Instantly, in support of its finding that the evidence was sufficient to establish "abuse" under the PFA Act, the trial court explained:

> [The trial court] found Mother's testimony at the [final PFA] hearing to be credible; but did not find Father's denials

credible. Father was emotional and combative on the witness stand, and repeatedly refused the court's directions to answer the questions to him without adding additional statements. He had to be strongly cautioned by the court to comply with court directives. While Father did admit that he had told Mother he wished her dead, he dismissed that as mere emotion. However, the threats of beatings of her and her family by Father, by his family and by people he controlled, along with his wish of Mother's death, and her need to watch her back, made reasonable Mother's fear of imminent serious bodily injury at the hands of Father.

T.C.O. at 3.

Father's argument comprises of four points:

First, Father argues that his gun ownership should have had no bearing on whether Mother was in reasonable fear. Father's Brief at 10-12. He explained that while he posted a picture of the gun on his private social media account, that picture was sent to Mother by Mother's friend. Second, Father argues that while he admitted telling Mother he wished she had died at childbirth, this could not constitute a threat as it did not communicate an intention to inflict harm. *Id.* at 12-16. Third, Father denies threatening Mother's family, but argues even if he did, threats against other individuals do not constitute a threat toward the PFA petitioner. *Id.* at 16-18. Fourth, Father argues that Mother was not in reasonable fear of imminent harm, as the events allegedly occurred in May, but she did not seek protection until July – just days before their custody trial. *Id.* at 18-21.

Father would have us consider each of these points in isolation. It would be illogical, however, for us to confine our review to whether each incident, in a vacuum, would place Mother in reasonable fear of bodily injury. As we

stated in **T.K.**, **supra**, the trial court has the discretion to consider these circumstances in their totality. **See also** 23 Pa.C.S. § 6102(a)(5) ("knowingly engaging in **a course of conduct or repeatedly committing acts towards another person**, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury") (emphasis added). Thus, we review the record as a whole.

Relevant history began in Summer 2018, prior to the pregnancy, when Mother introduced Father to her parents. Father became upset with the parents and eventually threatened to have people shoot them and their house. In October 2018, Mother discovered she was pregnant. **See** N.T., 7/18/19, at 6. By January 2019, Father wished to marry Mother. He wanted to surprise her by taking her to get a marriage license. When Mother told Father that she was not ready to marry him, Father became violent. **See** N.T., at 13. Mother testified, "He pulled over on the highway, put the car in park, started getting irate with me, yelling, telling me he was going to text his attorney, threatened to take the [unborn] baby again, punched the steering wheel so hard that he busted his knuckles open." **Id.**

In early May, the Child was born premature and had to convalesce in the neonatal intensive care unit (NICU) for eight days. Mother did not inform Father of the birth until May 22, when she was home with Child and her parents. Mother testified that she did not want Father at the hospital while she and Child were in fragile states. When Mother did text Father to make him aware of the birth, she did so to explain the stay in the NICU and her

intention to set up custody schedules to ensure Mother's safety.  *See id*. at 11.  At the time, Mother was living with her parents in their home.  Although she told Father not to come over, he came anyway.

When he arrived, Father was uninterested in speaking to Mother until they were alone.  When Mother went outside with him to talk, Father then threatened her.  Mother testified, "He spoke most of the time, but he threatened me with his friends and family, they were going to beat me up, I needed to watch my back.  He told me twice he wished I died during childbirth, and that him, and his attorney, and the police were coming to take [Child] that night." *Id.* at 12.  Although Mother called the police that night, she did not seek a protection order.

In June 2019, Mother's friend sent her a picture from Father's snapchat, where he posed with a gun.  Mother had previously been aware that Father owned a firearm.  Although Mother testified that this fact added to her fear of Father, she did not seek protection until the instant petition in July 2019.

Returning to Father's arguments, we observe that the trial court explicitly found Mother's testimony credible, while finding Father's testimony not credible.  Because we must defer to the court's credibility findings, per *Custer*, *supra*, we are left with the following facts: Father threatened to shoot Mother's parents and shoot at their house; Father told Mother he wished she was dead; Father told Mother that he could employ individuals to beat her, and that she should watch her back; and Father made it known to Mother that he had a gun.  These facts constitute sufficient evidence to allow the trial court

to determine that Father placed Mother in reasonable fear of imminent bodily harm.

To be sure, Father's most salient point concerns the timing of Mother's petition for protection. Notwithstanding Mother's allegation that Father previously slapped her, or threatened her family, or warned her to watch her back, Mother did not seek protection until months after these incidents. In fact, she did not seek protection until just days before the parties were scheduled for a custody trial. Thus, Father contends that Mother did not fear for her safety, but merely sought to influence the court's custody decision.

This gave the trial court some pause, which prompted its questioning of Mother's decision to pursue protection when she did. Mother explained that she had previously sought protection prior to Child's birth, in January and March 2019, but that she was told Father's mental abuse did not constitute a reasonable fear of bodily injury. **See** N.T. at 15. She testified that while she remained in fear of Father – both before and after the specific threat on May 22, 2019 – her attorney advised her to wait until July to press for protection. N.T. at 39-42.

The timing issue turned on Mother's credibility; namely whether the trial court believed Mother's motivation was an ill-gotten custody order or whether Mother sought protection because she experienced a reasonable fear of imminent bodily harm. Notwithstanding the dubious advice from Mother's counsel, the trial court determined that Mother's true motivation was protection and not an upper hand in the custody litigation. As we defer to the

trial court's credibility determinations, we conclude that the record supports the court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/2020