J-A20004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NICOLE EVA GROSS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JARED ZALMAN MINTZ | : | No. 2567 EDA 2021 |

Appeal from the Order Entered November 9, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2021-20162

BEFORE:   STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:        **FILED SEPTEMBER 15, 2022**

Nicole Eva Gross (Appellant) appeals from the order denying her petition filed against Jared Zalman Mintz (Appellee), under the Protection from Abuse (PFA) Act.[1]  Appellant argues that the trial court abused its discretion in denying her PFA petition against Appellee based on video and audio evidence of the incident that prompted her petition, as well as her unrebutted testimony that Appellee had been stalking her in the months leading up to that event. Additionally, Appellant contends that the trial court abused its discretion in refusing to admit evidence of prior abuse.  After careful review, we affirm.

The parties are divorced parents who share legal and physical custody of their twin teenaged daughters and preteen son ("Son").  "By previous

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 23 Pa.C.S. §§ 6101–6122.

arrangement, the parties and their children met, on June 30, 2021, at an airport hotel in New York, to see their daughters off for a trip to the west coast, and to transfer custody of [Son] to [Appellee] for a trip to Atlanta" the following morning. Trial Ct. Op., 2/8/22, at 2. As part of their plan, Son was to stay with Appellee for the evening. *Id.* At about 8:50 p.m., Appellee went to Appellant's hotel room to retrieve Son, and repeatedly knocked on the door "loudly, but no one answered." *Id.* According to the trial court,

> [a]bout 10 minutes later, [Appellee] went back to [Appellant]'s room, knocked, and [Son] came out, at which point, [Appellee] stepped into the room to say good night to the girls and confirm [their] wake[-]up time. Upon [Appellee]'s entry into the room, [Appellant] screamed. [Appellee] was in the room no more than [eight] seconds.

*Id.* This incident was partially caught on a hotel security camera (which also captured audio), but the footage did not show what occurred inside the room.[2] Appellant testified at the PFA hearing that, when Appellee entered the room, he

> full-frontally grabbed me, charged at me, pushed me backwards, [and] hit me with the front door of that hotel room. [He s]hook me. [He s]lammed me to his right and my left so that I was back-pedal[ling], and [he] slammed me into the side wall very hard [and] into the back of the door.
>
> What [*sic*] took about 30 seconds, [he] injured … my neck[, my] back[, m]y left hand[, and m]y legs[.] I was stunned.

---

[2] The video was played at the November 9, 2021, PFA hearing. *See* N.T., 11/9/21, at 89.

N.T., 11/9/21, at 33. However, for various reasons discussed below, the trial court determined that this testimony regarding Appellee's allegedly violent acts inside the room was not credible. Trial Ct. Op. at 3.

The following morning, at 4:30 a.m., "the parties left their hotel rooms for the terminal from which the girls were leaving. [Appellee] and [Son] went back to their hotel room[.]" Trial Ct. Op. at 2. Appellant "went to airport security to report that [Appellee] had assaulted her the night before." *Id.* As a result of that report, Appellee was arrested a few hours later. *Id.* He was charged with assault, child endangerment, and related offenses, however, those charges were ultimately dismissed.[3] An investigation by Children and Family Services in New York was also dismissed. *Id.* at 9.

Subsequently,

[o]n October 8, 2021, … [Appellant] filed a [PFA petition] against … [Appellee]. On the same date, a temporary PFA [o]rder was entered in favor of [Appellant] against [Appellee]. A hearing for a Final PFA [o]rder was scheduled for November 9, 2021. On November 9, 2021, th[e trial c]ourt conducted a hearing to determine whether a Final PFA [o]rder should be entered as a result of [the] incident at JFK Airport . . . on June 30, 2021. Both parties had legal representation for the PFA Hearing. The [c]ourt found that it has jurisdiction over the parties and subject matter, and [Appellee] has been provided with reasonable notice and

_____

[3] The parties agree that the criminal charges were dismissed in New York, however, they dispute the manner and import of the dismissal. Appellant claims the Criminal Court of Queens County dismissed the charges upon Appellee's motion "because the district attorney was not ready for trial and had failed to extend the ready for trial deadline." Appellant's Brief at 12. Appellee claims the charges were dismissed "upon motion of the [d]istrict [a]ttorney." Appellee's Brief at 2. Resolution of this dispute is not germane to the instant appeal.

opportunity to be heard. After the Final PFA Hearing, th[e c]ourt denied [Appellant]'s request for a final [PFA] order. On December 8, 2021, [Appellant] . . . filed a [timely, *pro se*] Notice of Appeal. On January 4, 2022, th[e c]ourt issued an [o]rder directing [Appellant] to file a [Pa.R.A.P. 1925(b) statement].

*Id.* at 1-2. Appellant then filed a counseled Rule 1925(b) statement on January 25, 2022, and the trial court issued its Rule 1925(a) opinion on February 8, 2022.

Appellant now presents the following questions for our review:

1. Did the trial court err or abuse its discretion in denying [Appellant]'s [PFA petition] on the grounds that the court did not believe [her] testimony, where the hotel surveillance video with sound was sufficient to sustain [her] burden of proving that [Appellee] assaulted her and that she had a reasonable fear of imminent bodily injury?

2. Did the trial court err or abuse its discretion in refusing to admit evidence of past abuse by [Appellee]?

Appellant's Brief at 4-5.

Our standard of review for PFA orders is well settled. In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion.

The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, enough to tip a scale slightly.

*E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (cleaned up).

Additionally, this Court "defers to the credibility determinations of the trial court as to witnesses who appeared before it." *Karch v. Karch*, 885 A.2d 535, 537 (Pa. Super. 2005), *quoting Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999).

- 4 -

The PFA statute defines abuse as

one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) ***Attempting to cause*** or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) ***Placing another in reasonable fear of imminent serious bodily injury.***

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

(4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a) (emphasis added). Thus, a PFA order should be granted when the accused "attempts" to cause bodily injury to the victim, 23 Pa.C.S. § 6102(a)(1), and/or when the accused places the victim in "reasonable fear of imminent serious bodily injury[,]" 23 Pa.C.S. § 6102(a)(2), not merely when bodily injury is caused by the offending behavior.

## I.

Appellant presents multiple sub-arguments under the rubric of her first claim. She argues that the trial court erroneously focused on whether she sustained "actual injuries" during the incident on June 30, 2021, whereas the PFA statute only required her to demonstrate by a preponderance of the evidence that Appellee attempted to cause bodily injury, or reasonably put her in fear of imminent serious bodily injury. Appellant's Brief at 27-28. She also asserts that, despite the adverse credibility determinations by the trial court, the video/audio evidence was alone sufficient to meet her burden under Sections 6102(a)(1) or (2) because it "shows a visibly angry [Appellee] barging into [her] hotel room and grabbing [her] by the forearms. It then records a female voice twice yelling[,] 'why would you push me?' It was undisputed that it was [Appellant] who twice yelled[,] 'why would you push me?'" Appellant's Brief at 28. Finally, she asserts that her unrebutted testimony that Appellee had stalked her leading up to the incident at the hotel was also sufficient to meet her burden under Section 6102(a)(5).

We begin with a review of the trial court's credibility determinations to ascertain if it exclusively focused on Appellant's 'actual injury' claims. The trial court determined that her testimony—that Appellee violently attacked her in the hotel room resulting in severe injuries—was not credible, instead finding that, "[i]n an attempt to exaggerate the incident **and** injuries, [Appellant] exaggerated herself into a realm of incredulity." Trial Ct. Op. at 3 (emphasis added). Regarding her injury claims, Appellant alleged that "bruises on her arm were a direct result of the assault," yet the trial court found that those

same bruises "were clearly visible on pictures taken by [Appellee] on the way to dinner earlier" that evening. *Id.* Appellant also testified that, in addition to the bruising resulting from the incident, she had sustained multiple, severe neck and back injuries that she claimed would require her to undergo "career-ending, [and] possibly a life-ending surgery." N.T. at 50-51. The court found that Appellant's injury claims were refuted by "pictures after the alleged incident [showing her] pulling a large suitcase into the airport terminal despite the extent of extreme injuries which she described in her testimony." Trial Ct. Op. at 3. And, despite professing to be suffering from those injuries at the time of the PFA hearing, the court additionally observed that it "did not prevent her from carrying a large box of documents into the courtroom." *Id.* Thus, the trial court did not find any of Appellant's injury claims to be credible.

However, the court's credibility determinations were broader than its rejection of Appellant's injury claims. The trial court also found her testimony regarding Appellee's violent acts implausible, finding that the assault she alleged could not have occurred during the short time when he was inside the hotel room. Trial Ct. Op. at 9-10. The hotel security video did not show any violent acts, and Appellee was only off camera and inside the room with Appellant for about eight seconds. *Id.* at 10. This timeline was also inconsistent with Appellant's own testimony that the alleged assault occurred

over 30 seconds.[4] Thus, the trial court did not believe Appellant's testimony regarding Appellee's conduct, in addition to rejecting the credibility of her injury claims.

Moreover, the trial court also found Appellee's "testimony to be more credible" than Appellant's testimony regarding the incident at the hotel. Trial Ct. Op. at 7. Appellee testified that, after he returned from knocking on the hotel room door the first time, the door opened, and Son came out. N.T. at 125. Appellee stated that he briefly entered the room to speak to his daughters about their early departure time, and then left. *Id.* He denied Appellant's claim that he had forcibly entered the room. *Id.* at 126. He denied that he made any physical contact with Appellant when he went into the room. *Id.* at 134. He denied forcing the door open. *Id.* He also denied grabbing Appellant's arms, pushing her, or engaging in any type of scuffle while inside the room. *Id.* at 134-35.

Thus, we ascertain no merit to Appellant's contention that the trial court denied her PFA petition based solely on its credibility assessment of her injury claims. The trial court also rejected the credibility of her testimony regarding

_____

[4] Appellant contends that the court overstated or otherwise misunderstood her estimation of the duration of the attack, arguing that she was also accounting for the time Appellee was knocking loudly on the door, and further that "the extreme pressure of being assaulted" may have distorted her perception of time. Appellant's Brief at 31. Regardless, the trial court's credibility assessment did not rest solely on Apppellant's inaccurate time estimate of the during of the alleged assault, as the court focused more on its determination that the eight seconds in which Appellee was off camera and inside the room "would have been an insufficient time for [him] to have committed the acts of violence described by [Appellant]." Trial Ct. Op. at 10.

Appellee's conduct, and further held that his version of events was more credible.

Appellant nevertheless maintains that the video/audio evidence of the incident was itself sufficient to meet her burden under Section 6102(a)(1) and/or Section 6102(a)(2). In the video, after Appellee returns to the hotel door the second time, he can be seen and heard on the hotel security video knocking loudly on the door. Appellant can then be seen opening the door, and Appellee can be heard asking Son if he wants to leave. Seconds later, Son exits the room and walks down the hallway. Appellant then appears in the doorway, trying to hand something to either Appellee or Son.

Appellee then quickly walks past Appellant into the room. It appears that he may have made contact with Appellant's outstretched hands, but the video does not make it clear whether he grabs her arm or whether he is attempting to grab the item in her hand, as the pair quickly move out of frame. Appellant immediately yells "why would you push me," which she repeats a few seconds later. Appellee can be heard **at the same time** calmly talking from inside the room.[5] Although the audio captured their voices, no sounds of a scuffle can be heard despite Appellant's claim that Appellee hit her with the door, thrashed her back and forth, and slammed her into a wall. Only eight seconds after he entered, Appellee calmly leaves the room and follows Son down the hallway. Immediately after he exits, Appellant can again be

_____

[5] This appears to corroborate his testimony that he was talking with his daughters inside the room.

seen in the doorway, still holding the item in her hand, and asking Son, repeatedly, and with no evident distress in her voice, "please come back and take this."

Thus, Appellant's claim that the video/audio evidence independently demonstrates that the trial court abused its discretion in denying her request for PFA order lacks merit. We agree with the court that the video/audio evidence tends to refute her characterization of the incident, while simultaneously corroborating Appellee's account of events. The video does show that Appellee *may* have made some contact with Appellant's hands or forearm as he entered the room, however, it does not support her claims that he violently attacked her as she described during her testimony. As noted above, it is not even clear whether Appellee grabbed her arms as he entered, or whether he was reaching for the item in Appellant's hand that she was trying to hand to him.

Although Appellant can be heard yelling that Appellee had pushed her, neither party can be seen on camera at that time, and the audio tended to support the trial court's determination that no violence had occurred inside, even if some of the evidence tended to support her claims. For instance, in addition to the trial court's credibility analysis discussed above, Appellee can be heard calmly speaking to his daughters during the 8 seconds he was in the room, yet the audio did not capture any other sounds corroborating the violent acts alleged by Appellant. Moreover, immediately after Appellee is seen on

the video leaving the room, Appellant appears in the doorway, speaking calmly, and displaying no indication that she had just been violently attacked.

Thus, not only does the video/audio recording tend to undermine Appellant's claim below that she had been seriously injured during those eight seconds, it also does not support her assertions on appeal that the video/audio evidence that Appellee had attempted to inflict bodily harm. It also fails to show that she had been put in reasonable fear of imminent serious bodily injury. Thus, contrary to Appellant's arguments, the video/audio evidence does not overcome the deference we afford the trial court's credibility determinations, nor did that evidence provide an independent basis for issuing a PFA order against Appellee. Accordingly, we ascertain no abuse of discretion in the trial court's denying her PFA petition based on the video/audio evidence.

Appellant also claims that the trial court abused its discretion in denying her PFA petition due to her unrebutted testimony that Appellee had been stalking her in the six months prior to the June 30, 2021, incident. This claim was not raised in Appellant's statement of the questions presented as required by Pa.R.A.P. 2111(a)(4). **See** Appellant's Brief at 4. The Appellate Rules further provide that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Furthermore, this claim was not presented in Appellant's Rule 1925(b) statement. In "order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a [Rule 1925[(b) statement]. Any issues not raised in a [Rule] 1925(b) statement

- 11 -

will be deemed waived." *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). Accordingly, for both reasons, Appellant waived this issue for our review.

Nevertheless, even if Appellant did not waive this claim, she still would not be entitled to relief on the merits. As Appellee notes, the testimony in question was brief and undeveloped, and Appellant's argument in support of this claim consists only of her citation, without significant analysis, of this court's decision in *T.K. v. A.Z.*, 157 A.3d 974 (Pa. Super. 2017) (holding evidence that ex-husband stalked and harassed ex-wife was sufficient to support grant of a PFA order). *See* Appellee's Brief at 26.

Here, Appellant's counsel asked her if there were "incidents of violence perpetrated by" Appellee in "the six months preceding the New York trip[,]" to which Appellant responded, "Just followed me, stalked me." *See* N.T. at 47-48. No follow-up questions were asked after this vague allegation. Appellant did not offer any specific testimony or other evidence regarding the nature of Appellee's alleged stalking, nor did she provide any details such as the time, date, and/or location where the alleged stalking occurred.

As Appellee argues, by contrast, in *T.K.*, the

appellee "identified exact dates as recorded in her diary" and was able to establish a pattern that [the] appellant "had harassed and stalked her throughout the seven years following their separation." *Id.* at 974. The evidence also showed that [the] appellant had repeatedly followed her in his vehicle, in the local grocery store, at sporting events, and in other locations, all of which [the] appellant did not deny. This Court therefore held that "[the a]ppellant's behavior falls squarely within the definition of abuse in Section 6102(a)(5), which includes "[k]nowingly

- 12 -

engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily harm." *Id.* at 976.

Appellee's Brief at 25-26.

Appellee argues that Appellant's "bald assertion in five-conclusory words, without specificity of time, place and circumstances, as was done in *T.K.* . . . does not constitute a sufficient record by which the lower court could take this accusation seriously, and go so far as to find that [Appellee] had violated" Section 6102(a)(5). Appellee's Brief at 26. We agree. The record does not support Appellant's claim that this vague and undeveloped accusation of stalking demonstrated that the trial court abused its discretion in denying a PFA order. Thus, even if the claim was not waived, we would deem it meritless.

## II.

In her second claim, Appellant argues that the trial court erred in refusing to admit "evidence of prior incidents of abuse." Appellant's Brief at 40. Specifically, she complains that:

> The trial court . . . limited [her] direct testimony to incidents between January and July 2021. []N.T.[] at 24-27[.] Similarly, on cross[-]examination, counsel sought to impeach [Appellee]'s testimony with photographs from 2017 showing injuries to [Appellant]'s neck after [he] attempted to strangle her. [*Id.*] at 142-44[.] The trial court sustained objections and prevented the introduction into evidence of photographs from 2017. [*Id.*] at 144[.] The court also cut off questions to [Appellee] about past abuse on the grounds that it was "irrelevant." [*Id.*] at 136[.]

Appellant's Brief at 40.

- 13 -

Our standard for reviewing evidentiary claims is well-settled:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus, our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*McManamon v. Washko*, 906 A.2d 1259, 1268–69 (Pa. Super. 2006)

(cleaned up).

Here, the trial court determined that

it would not hear testimony relating to events that occurred prior to Judge [Daniel] Clifford's December 2020 [c]ourt [o]rder, unless [Appellant] was able to prove the current allegations, thus making a pattern of behavior relevant to the terms of a final PFA order. She was unable to sustain her burden of proving the current allegations by a preponderance of the evidence.

Trial Ct. Op. at 6.

Appellant now argues that:

The trial court based its denial of a PFA [order] on its finding that [Appellant]'s testimony about the events at the TWA hotel was not credible. Evidence that the assault on June 30 was part of a multi-year history of physical abuse would have made [her] testimony more credible and would have supported the granting of a PFA. The court's refusal to admit evidence of prior abuse was therefore highly prejudicial to [Appellant].

The trial court's refusal to permit [Appellant]'s testimony about prior abuse or admit into evidence photographs relevant to the issue of prior abuse, was clear error requiring reversal. *See Buchhalter* [*v. Buchhalter*], 959 A.2d [1260,] 1264 [(Pa. Super. 2008)].

Appellant's Brief at 40-41.

- 14 -

In **Buchhalter**, as here, the trial court denied a final PFA order sought by Patricia Buchhalter (Patricia) against Steven Buchhalter (Steven). In reaching that holding, the trial court "refused to allow Patricia to testify about past abuse. . . ." **Buchhalter**, 959 A.2d at 1263. The court had reasoned that it "could not consider the past abuse as a basis for a new PFA [o]rder because [Patricia] had already obtained a[ PFA] [o]rder in the past" regarding the same abuse. **Id.**

This Court vacated and remanded for further proceedings after finding that the trial court had erred in refusing to admit the evidence of past abuse, reasoning as follows:

> While we recognize that the court as the finder of fact is entitled to weigh evidence and assess credibility, it was the court's duty to determine whether Patricia was in reasonable fear of imminent serious bodily injury. The facts surrounding the prior PFA consent order are relevant to an understanding as to the reasonableness of Patricia's fear relative to the present petition. Moreover, merely determining that a party is not credible is not a basis in itself to exclude relevant testimony. We therefore conclude that the trial court[,] by refusing to allow testimony regarding the prior PFA consent order[,] erred as a matter of law.

**Id.** at 1264. In reaching this conclusion, the **Buchhalter** Court relied, in part, on 23 Pa.C.S. § 6107(a), which advises "that any protection order **granted** by a court may be considered in any subsequent proceedings under this title." 23 Pa.C.S. § 6107(a) (emphasis added).

The instant case is distinguishable, Appellee argues, because the prior abuse allegations by Appellant were the subject of her four prior, **unsuccessful** PFA petitions, whereas in **Buchhalter**, the allegations of prior

- 15 -

abuse had been found credible in the prior proceedings, resulting in a PFA order being granted. See Appellee's Brief at 31. Appellee further complains that Appellant's argument on appeal neglects to acknowledge or discuss the prior determinations in this case, including the trial court's reference to the most recent denial of Appellant's last PFA petition by Judge Clifford in December of 2020. *See id.* at 31-32. Appellee provided the following summary of these prior determinations in his brief:

> Because of [Appellant]'s exclusion of material documents from the Reproduced Record and because of [her] second argument in her Brief to this Court, *i.e.*, that the lower court erred in "refusing to admit evidence of past abuse by [Appellee]," it becomes necessary to recite the numerous filings and dispositions of [Appellant]'s prior PFA petitions filed in the lower court, documented by Appellee's Supplemental Reproduced Record ("S.R." designations).

> Just as she did in the filing of the October 2021 PFA, in every pleading [Appellant] continues to repeat allegations, all of which were dismissed or denied as unfounded. At every turn, by filing duplicative petitions before multiple judges, [she] was able to keep the matter in play — until the final [o]rders which resulted in this and a companion Appeal at 959 EDA 2022.

> The parties separated in 2017 and obtained their divorce decree on March 28, 2019.[4] [Appellant] filed PFA petitions in both 2017 and 2018, alleging [Appellee]'s assault of [her] and their three children, each of which resulted in *ex parte* temporary orders preventing [Appellee] from contact or communication, and which involved police and [Office of] Children & Youth ("OCY") investigations, and child advocate court appointments ("MCAP"). Prior to hearing, after [there were] "unfounded" OCY determinations and [the] police closed [the] files, [Appellant] (with MCAP joinder) withdrew her petitions which were stricken by the assigned judges both in 2017 and 2018, and the temporary orders were vacated (S.R. 8-17a).

<sup></sup>4 An Order of Custody was entered on March 17, 2019 ("Custody Order"), awarding [Appellee] and [Appellant] joint legal and physical (50-50) custody of their children.

As a result of an alleged assault by [Appellee], causing what [Appellant] claimed was a fractured foot, on April 8, 2020, [she] filed her third PFA petition, which Judge Tolliver denied (S.R. 18a).

Without disclosing this filing, [Appellant] filed her fourth PFA petition on June 11, 2020, and obtained an *ex parte* temporary order (S.R. 19-21a). Significant to the instant appeal, [her] petition contained a five-page typewritten narrative (similar to the petition underlying the present appeal) setting forth briefly the aforesaid March 2020 incident, and then providing her familiar litany entitled "Summary Recent & Past Events," alleging physical abuse, serious bodily injuries, harassment, threats of violence, trespassing and intimidation, and stalking dating back to 2017 (when the first PFA petition had been filed) (S.R. 22-32a).

Because of several delays, the PFA hearing finally took place before Judge Daniel Clifford on December 21, 2020. After [a] full hearing, Judge Clifford denied a final PFA order and vacated the temporary PFA order. (S.R. 33-40a).[5]

[5] This [o]rder, subsuming all the alleged abuse occurring prior to December 2020, is a final order, upon which Judge Daniele relied in her pre-hearing ruling on the scope of the hearing which is the subject of this appeal.

Appellee's Brief at 5-7. Appellant did not file a reply brief in this case, nor did she file any motions disputing the contents or validity of Appellee's Supplemental Reproduced Record.

Appellee argues that, unlike in **Buchhalter** and similar cases, "there was no prior order in existence arising out of prior acts of abuse. On the contrary, all the PFA petitions brought in Pennsylvania between 2017 and 2021, were either withdrawn . . . or were denied . . . after evidentiary hearings." Appellee's Brief at 30. Furthermore, he argues that collateral

estoppel precluded Appellant's attempts to relitigate these prior claims of abuse.

> Collateral estoppel, which sometimes is referred to as issue preclusion, . . . "operates to prevent a question of law or issue of fact which has once been litigated and fully determined in a court of competent jurisdiction from being re[-]litigated in a subsequent suit." **Vignola v. Vignola**, 39 A.3d 390, 393 (Pa. Super. 2012). Collateral estoppel applies
>
> > if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.
>
> > **Id.**

**E.K. v. J.R.A.**, 237 A.3d 509, 521 (Pa. Super. 2020).

> Appellee contends that collateral estoppel applies here because:
>
> [Appellant] had a full and fair opportunity to litigate whether any abuse or threat of abuse rose to a "reasonable fear of imminent serious bodily injury" when [she], represented by counsel, participated in the proceedings before Judge Eisenberg. [Appellant] chose not to put on her case and allowed her petition to be dismissed by default. She also had a full opportunity to litigate those issues before Judge Clifford, where both a supposed abuse had occurred in March 2020, and where she had incorporated into her petition all of the alleged acts or threats of abuse going back to 2017. No appeal was taken from either of those final orders.

Appellee's Brief at 35. Again, because Appellant did not file a reply brief, she has not provided a response to Appellee's argument that collateral estoppel

prevented her from relitigating her prior claims of abuse in the context of the PFA petition under review.

Given the record before us, we ascertain no abuse of discretion by the trial court in conditionally refusing to admit evidence of prior abuse that was litigated before Judge Clifford and rejected in his December 2020 order denying Appellant's previous PFA petition. Appellant has failed to meet her burden of convincing us that the trial court's limitation of prior-abuse evidence was unreasonable or legally erroneous in the circumstances of this case. Instead, we agree with Appellee that this matter is distinguishable from **Buchhalter**, because none of Appellant's prior PFA petitions alleging abuse were **granted**, **see** Section 6107(a), and she has failed to distinguish the at-issue claims of prior abuse from those addressed in her four previous and unsuccessful PFA petitions.[6]

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *9/15/2022*

---

[6] To the extent that they are not distinguishable from the abuse allegations addressed in Judge Clifford's December 2020 order, we agree with Appellee that collateral estoppel barred Appellant from relitigating those claims.