J-A19031-25

2025 PA Super 218

KEZIA GOLDNER ON BEHALF OF : IN THE SUPERIOR COURT OF
MINOR CHILDREN, K.M. AND K.M. : PENNSYLVANIA
:
Appellant :
:
:
:
v. :
:
: No. 346 WDA 2025
LARRY ANTHONY MANIGAULT :

Appeal from the Order Entered January 13, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-13-005067-017

BEFORE: BOWES, J., STABILE, J., and BENDER, P.J.E.

OPINION BY BOWES, J.: **FILED: September 26, 2025**

Kezia Goldner ("Mother"), on behalf of her minor children K.D.M., born in 2009, and K.M., born in 2013, appeals from the order granting in part and denying in part her protection from abuse ("PFA") petition filed against Larry Anthony Manigault ("Father"). We affirm.

We glean the following facts from the certified record. Mother and Father began their history of custody litigation as to their two sons in 2015. During their first arrangement, both Mother and Father lived in Pittsburgh. Mother exercised primary physical custody of the boys, while Father had partial custody. Generally, this arrangement persisted until 2019, when Mother petitioned for relocation to South Carolina. The court denied the petition, but granted the parties shared legal and physical custody whereby Mother had the children during the summer months, their breaks from school,

and alternating holidays, and Father had the sons at all other times. As a result, Father exercised primary physical custody of both boys.

Relevant to the instant matter, in December 2024, Father was driving the children to his home after K.M.'s wrestling practice. K.D.M. was in the front passenger seat while K.M. rode in the backseat. Father became angry with K.D.M.'s persistent cell phone use and they began to argue. He then took K.D.M.'s phone out of his hands and slapped him on the side of his head. They continued to bicker. Father proceeded to stop the vehicle in the middle of traffic, step out, open the passenger door, and choke K.D.M. He dragged the child out of the car, punched him three times in the face, and provoked him to return the blows. K.D.M. struck Father once.

Father then grabbed K.D.M. by his coat and forced him back into the car. K.D.M. asked Father to drop him off at his godmother's house, who was a close friend of Mother. En route, Father called K.D.M. a "loser" and told him "F U." N.T. PFA Hearing, 1/8/25, at 6. Throughout the incident, K.M. remained in the backseat of the vehicle. Father did not direct any physical or verbal abuse toward the younger son. Upon observing K.D.M., his godmother informed Mother of the altercation over a video call and showed her the older son's bruising and swollen eye.

Based on this event, Mother filed the instant PFA petition on behalf of both boys, seeking full-time custody. The court granted a temporary PFA order and scheduled a hearing, at which both children, Mother, and Father

testified. K.D.M. described the quarrel above and additionally stated that Father had choked him on two prior occasions and hit him with a belt. He attested that Father did not reprimand K.M. in the same manner that he typically punished K.D.M. The younger son described his witnessing of the altercation between Father and K.D.M., detailing the injuries Father inflicted on his older brother. K.M. testified that Father never choked him, but explained an instance where Father had hit him with a belt for accidentally breaking the bathroom sink. Mother attested that she was fearful for K.M.'s safety because of Father's abuse against K.D.M. Father admitted that he had punched K.D.M. in the mouth for disrespecting him, and contended that the use of a belt on K.M. constituted corporal punishment.

At the conclusion of testimony, the court entered a final one-year PFA order, granting it as to K.D.M., but dismissing it as to K.M. Accordingly, K.D.M. went to live with Mother in South Carolina, and K.M. returned to Father's care. Mother filed the instant timely appeal.[1] She simultaneously submitted a statement pursuant to Pa.R.A.P. 1925(a)(2)(i), and the court issued a

_____

[1] Allegheny County employs the "One Judge, One Family" scheme so that a single judge handles related family court cases. The record reflects that on the day of the PFA hearing, Mother also petitioned to modify the parties' existing custody arrangement, seeking full-time custody of both sons. Shortly after the court issued the final PFA order, Father responded to Mother's custody petition, and the court scheduled a conciliation hearing for April 2025. Citing the appeal of the final PFA order, however, the court cancelled the parties' conciliation hearing and stated that "[e]ither party may praecipe for a new conciliation upon resolution of the matters before the Superior Court." Order, 3/19/25.

responsive Rule 1925(a) opinion. Mother now raises the following questions

for our review:

> I. Did the trial court err by failing to enter a final PFA order of court for [K.M.] after finding abuse to have occurred against [K.M.]'s sibling in [K.M.]'s presence?
>
> II. Did the trial court err in failing to enter a PFA [order] against Father for [K.M.] and in returning custody of [K.M.] to Father without imposing safety conditions necessary to protect [K.M.] from Father and without providing reason why it is in [K.M.]'s bests [*sic*] interests that Father have unsupervised custody of him under Kayden's Law where the court found that Father committed abused [*sic*] against a household member ([K.M.]'s sibling)?

Mother's brief at 4-5 (some capitalization altered).

We begin with an overview of the applicable principles. "In the context

of a PFA order, we review the trial court's legal conclusions for an error of law

or abuse of discretion." ***E.K. v. J.R.A.***, 237 A.3d 509, 519 (Pa.Super. 2020)

(cleaned up). An abuse of discretion "occurs where the judgment is manifestly

unreasonable or where the law is not applied[,] or where the record shows

that the action is a result of partiality, prejudice, bias, or ill will." ***Kaur v.***

***Singh***, 259 A.3d 505, 509 (Pa.Super. 2021) (cleaned up). This Court also

"defers to the credibility determinations of the trial court as to witnesses who

appeared before it." ***E.K.***, 237 A.3d at 519 (cleaned up). We further "review

the evidence of record in the light most favorable to, and grant all reasonable

inferences to, the party that prevailed before the PFA court." ***Kaur***, 259 A.3d

at 509.

Pursuant to the PFA Act, "the court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children." 23 Pa.C.S. § 6108. In relevant part, the act defines "abuse" as:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury[ or] serious bodily injury[.]
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.

23 Pa.C.S. § 6102. Accordingly, "actual physical harm" is not required before a PFA petition may be granted, rather "reasonable fear is sufficient." *S.W. v. S.F.*, 196 A.3d 224, 231 (Pa.Super. 2018).

The PFA Act serves to "protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *K.B. v. Tinsley*, 208 A.3d 123, 127 (Pa.Super. 2019) (cleaned up). Thus, one of the court's objectives in a PFA hearing is to ascertain "whether the victim is in reasonable fear of imminent serious bodily injury." *E.K.*, 237 A.3d at 519 (cleaned up). The petitioner must prove her allegations of abuse by a preponderance of the evidence. *See S.W.*, 196 A.3d at 231.

Mother first contends that the trial court abused its discretion when it did not grant the PFA petition as to K.M. because he witnessed Father strangle

K.D.M., which she describes as "a deeply traumatic experience." **See** Mother's brief at 10. She avers that Father's actions "could reasonably place a child in fear of imminent harm" and that the court could have inferred distress from K.M.'s testimony. **Id**. (citing **T.K. v. A.Z.**, 157 A.3d 974 (Pa.Super. 2017)).

The trial court concluded that Mother did not meet her burden in establishing that Father abused K.M. **See** Trial Court Opinion, 4/7/25, at unnumbered 4. Specifically, the court stated: "At all times during the altercation, [K.M.] remained in the vehicle. Moreover, the initial confrontation between [K.D.M.] and Father occurred in the front seat of the vehicle while [K.M.] was in the back seat. Father directed no threatening action, neither verbal nor physical, toward [K.M.] during the incident." **Id**.

We discern no abuse of discretion or error of law. Although K.M. witnessed Father abuse K.D.M., the record is devoid of evidence that Father physically abused the younger brother, or that K.M. was fearful that Father would inflict bodily injury on him. **Cf. T.K.**, 157 A.3d at 977 (finding that the appellee established that the appellant had placed her in reasonable fear of bodily injury where she "testified to her deep concern for her safety, opining that [the a]ppellant's behavior would eventually escalate from repetitive stalking to seeking to cause her bodily harm"). Unlike his older brother, K.M. did not testify that he was concerned for his own safety, or otherwise indicate that he was scared that Father would harm him. **See** N.T. PFA Hearing,

1/8/25, at 17-24. Since the record supports the court's determination, we have no cause to disturb its conclusion.

Mother's remaining contention concerns the application of Kayden's Law to the instant matter. In a custody action, the Child Custody Act requires the trial court to weigh several factors pertaining to the child's best interest outlined in 23 Pa.C.S. § 5328(a). As our Supreme Court has explained:

> Section 5328(a), along with other domestic relations provisions, was amended pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as "Kayden's Law"), effective August 13, 2024. Kayden's Law expands the factors to be considered in the custody court's best interest analysis and now requires the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child," which is defined in Kayden's Law as including "the physical, emotional and psychological well-being of the child," and any "violent or assaultive behavior committed by a party." Act of April 15, 2024, P.L. 24, No. 8, §§ 2-3 (as amended 23 Pa.C.S. §§ 5322(a), 5328(a)).

**Velasquez v. Miranda**, 321 A.3d 876, 886 n.6 (Pa. 2024) (cleaned up). Kayden's Law also amended § 5323(e) of the Child Custody Act, which states that if a court grants custody to a parent with a history of abuse, it must implement safety precautions and explain why the award is in the child's best interest. **See** 23 Pa.C.S. § 5323(e).

While PFA proceedings and custody matters frequently overlap, the two are governed by separate provisions of the Domestic Relations Code, namely the PFA Act and the Child Custody Act, respectively. In describing the interplay between the two types of actions, we have explained that "[c]ustody wise, a PFA order is not designed to impose anything but emergency relief."

*C.H.L. v. W.D.L.*, 214 A.3d 1272, 1281-82 (Pa.Super. 2019) (cleaned up). In order to prevent abuse, "trial courts have the authority to enter [PFA] orders that conflict with custody orders." *Id*. at 1282. Accordingly, in a PFA matter, a court might "award custody on a temporary basis so that it may address emergency situations and protect a child until a final custody hearing can be held, when a permanent order can be entered." *Id*. at 1283. We have further clarified that since custody matters and PFA actions are distinct, and PFA orders only provide momentary reprieve, "a PFA court need not conduct a best interests custody analysis to award temporary custody as [a] form of relief under [§] 6108 of the [PFA] Act." *Id*. at 1282.

Mother argues that the trial court essentially awarded Father custody of K.M. when it dismissed the PFA petition as to him, and since custody was at issue, Kayden's Law was applicable. *See* Mother's brief 12-13. Specifically, she contends that the court abused its discretion in granting custody of K.M. to Father without implementing safety conditions pursuant to § 5323(e) after finding that Father had abused K.D.M. *Id*.

The trial court opined that because it was only considering a PFA petition, and "not awarding any form of custody to Father[,]" Kayden's Law was "inapplicable to the instant matter[.]" Trial Court Opinion, 4/7/25, at unnumbered 4. The court explained that "Father had already been exercising primary custody of [K.M.]" and, thus, dismissing the PFA petition as to the younger son did not equate to a grant of custody. *Id*. Accordingly, the court

- 8 -

concluded that the "factors and requirements" of Kayden's Law were not necessary to its analysis. *Id*.

We discern no abuse of discretion or error of law in the trial court's determination that Kayden's Law had no bearing on the resolution of the instant PFA petition. Custody proceedings are separate from PFA matters, which are designed only to implement emergency reprieve until a court can grant permanent relief through a custody action. *See C.H.L.*, 214 A.3d at 1281-82. Therefore, contrary to Mother's contention, the court was not required to apply § 5323(e) in this matter. Practically, the concerns of Kayden's Law for the safety of the children were implicit in this PFA proceeding since the sole focus was whether K.M. and K.D.M. were at risk from abuse by Father. However, although a PFA order may supersede a custody order, albeit temporarily, the provisions of Kayden's Law are not triggered unless and until a court is asked to consider a custody matter pursuant to the Child Custody Act.[2] Hence, no relief is due.

_____

[2] As mentioned in footnote one, Mother petitioned to modify the existing custody order based upon the instant PFA petition. When she appealed the final PFA order, the custody court cancelled the parties' conciliation hearing and referenced Rule 1701, which states that "after an appeal is taken . . ., the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a).

Although the parties did not raise this issue, if it were properly before us, we would have determined that the custody court erred in invoking Rule 1701 to cancel the parties' conciliation hearing pending resolution of the PFA appeal. Parties are permitted to file custody actions awaiting the determination of a
*(Footnote Continued Next Page)*

- 9 -

In sum, the record supports the court's conclusion that Father did not abuse K.M., and the court did not err or abuse its discretion when it did not apply Kayden's Law to the instant PFA matter. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/26/2025

_____

PFA matter and would be bound by a subsequent final custody order. **See** 23 Pa.C.S. § 6108(a)(4)(v) (stating that where a trial court orders temporary custody as a form of relief in a PFA order, "[n]othing in this paragraph shall bar either party from filing a petition for custody under Chapter 53 (relating to custody) or under the Pennsylvania Rules of Civil Procedure"); **see also** Final PFA Order, 1/13/25, at ¶ 5 ("Any valid custody order entered after the date of the PFA order would supersede the custody provisions of this PFA order.").

The court, therefore, should have held the conciliation hearing notwithstanding this appeal. If the parties could not reach an agreement, the matter would proceed to a hearing, and the court would issue a final custody order in consideration of Kayden's Law. Notably, a finding of abuse by a parent against a child in a PFA order would **heavily** weigh in favor of a change in custody to the non-abusive parent. **See** 23 Pa.C.S. § 5328(a) (mandating that the court give "substantial weighted consideration" to the best-interest factors "which affect the safety of the child," *i.e.*, "[w]hich party is more likely to ensure the safety of the child[;]" "[t]he present and past abuse committed by a party or member of the party's household, which may include past or current [PFA] or sexual violence protection orders where there has been a finding of abuse[;]" and "[v]iolent or assaultive behavior committed by a party.").

- 10 -