2024 PA Super 128

| | | |
|---|---|---|
| SMRITI BHATIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER FERNANDEZ | : | |
| | : | |
| Appellant | : | No. 1715 EDA 2023 |

Appeal from the Order Entered June 1, 2023
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 2301V7313

BEFORE: PANELLA, P.J.E., NICHOLS, J., and BECK, J.

OPINION BY PANELLA, P.J.E.: **FILED JUNE 20, 2024**

Christopher Fernandez appeals from the June 1, 2023, order granting Smriti Bhatia's[1] protection from abuse ("PFA") petition.[2] Fernandez claims there was insufficient evidence to grant the PFA petition. After careful review, we affirm.

Bhatia and Fernandez were former intimate partners. They were in an on-again-off-again relationship from approximately August or September 2021, through the beginning of June 2022. Although they did not live together, Bhatia did give Fernandez a key to her apartment. During their relationship, Bhatia felt Fernandez was lying to her and manipulating her. She explained she was concerned because "[t]here were times when we would fight, and I

_____

[1] Bhatia has not filed a brief on appeal.

[2] **See** 23 Pa.C.S. §§ 6101-6122.

would see him standing with a knife over the sink because he just felt so terribly after the fight." N.T. Hearing, 6/1/23, at 23. She later saw him with cuts on his arm "a couple of times[.]" *Id.* When questioned about why that caused her to have safety concerns, Bhatia explained "if he could do it to himself, he could probably in a fit of rage do it to -- … I was just concerned about him, I guess, more than myself at that point." *Id.* at 24.

When the relationship ended, Fernandez returned the key to Bhatia's apartment. Bhatia "did not want to have any sort of contact [with Fernandez,] but [she] did see him come into [her] apartment complex a couple times." *Id.* at 19. Fernandez did not live in the same apartment complex. "He lives in a different part of the city." *Id.* at 20. At first, Fernandez kept texting and emailing Bhatia, so around the end of August, she "blocked him off everything." *Id.* at 21.

In August, before Bhatia blocked Fernandez from contacting her, she saw him drive into her apartment complex. She confronted him while he was still in his car. She asked what he was doing there, and he responded that "he just comes here and sits here and thinks about what he has done." *Id.* at 20. She told him to leave and warned him that if she saw him again in her apartment complex, she would call the police. Fernandez left. Bhatia explained to the trial court that she felt scared and violated after this incident.

Approximately two weeks prior to filing the PFA petition, when Bhatia returned home from a trip, there were items missing from her apartment,

including a few pants, a jacket, and underwear. She suspected Fernandez entered her apartment while she was away and took the items.

Bhatia filed the PFA petition on January 23, 2023. She filed the PFA petition due to information her current boyfriend, Kevin Mcanally, provided her. A hearing was held on the PFA petition on June 1, 2023. Mcanally testified at the PFA hearing that he works remotely. On January 18, 2023, he was working remotely from Bhatia's apartment. Around 2 PM, he heard someone in the hallway outside Bhatia's apartment and keys rattling. He was on a Teams call at the time, so when he heard a "slight knock" he did not answer the door. He heard a key in the door to Bhatia's apartment and then heard the door open. He looked behind him towards the door and saw Fernandez.[3] Fernandez said "sorry," closed the door, and left. Mcanally ended his Teams call and immediately called Bhatia to tell her what happened. Bhatia had the apartment complex change her door locks after she spoke with Mcanally.

Fernandez testified that he did not go to Bhatia's apartment on January 18, 2023, although he did admit to being in the area of her apartment. Fernandez testified that, although he lived in another section of Philadelphia, he was around Bhatia's apartment on January 18, 2023, to get his car inspected. However, Fernandez did not get his car inspected that day, because

---

[3] Mcanally did not know Fernandez but described the male and pointed to Fernandez in court identifying him as the male he saw in the doorway of Bhatia's apartment on January 18, 2023.

he claims he could not find the required documents. Instead, he went across the street to a supermarket, spent about a half hour inside, walked to a UPS store in the same complex as the supermarket, and went home. Fernandez entered his GPS log from January 18, 2023, and a receipt from the UPS store into evidence. These records show Fernandez left his home at 1:01 PM and arrived at the inspection station at 1:21 PM. He drove across the street to the supermarket and was there between 1:39 PM and 2:13 PM. He then drove home, which took him approximately a half hour. The GPS log had no record of Fernandez entering the UPS store. The UPS receipt shows he dropped off a package at 2:13 PM on January 18, 2023. Fernandez did not provide a receipt from the supermarket nor a copy of his credit or debit card purchase history for January 18, 2023, although he did claim to have a record of the purchase.[4]

Fernandez denied ever going to Bhatia's apartment on January 18, 2023. He did admit he reached out to her at times after their break-up, "despite her not reciprocating[.]" N.T. Hearing, 6/1/23, at 53. He further admitted that he drove to her apartment complex after they broke up and sat in the parking lot but left when she asked him to leave.

---

[4] Fernandez, although prepared with the GPS printout and UPS receipt, claimed he did not print out his credit or debit purchase history "because [he] did not think to bring it [to court]." N.T. Hearing, 6/1/23, at 55.

At the conclusion of the hearing, the trial court found Bhatia and Mcanally credible and granted the PFA petition. Fernandez timely appealed.[5] He raises one issue on appeal: "Did the trial court err in granting the protection from abuse petition where there was insufficient evidence to prove that Fernandez abused Bhatia?" Appellant's Brief, at 4.

Our standard of review in a PFA appeal is evaluating whether the trial court committed an error of law or abused its discretion. **See Mescanti v. Mescanti**, 956 A.2d 1017, 1019 (Pa. Super. 2008).

> The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, enough to tip a scale slightly.
>
>> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

_____

[5] On August 6, 2023, this Court ordered Fernandez to file his Rule 1925(b) statement by August 18, 2023, because the trial court docket revealed that he was not served with the trial court's order to do so. **See** *Per Curiam* Order 8/6/23. Fernandez complied and filed his Rule 1925(b) statement with this Court on August 15, 2023. Based upon the breakdown in court operations, and Fernandez's compliance with our Order, we will not find waiver of his issue. **See Hartdegen v. Berger**, 839 A.2d 1100, 1105 (Pa. Super. 2003) (we will not find waiver of issues on appeal where appellant was not served with notice pursuant to Pa.R.C.P. 236).

***B.K.P. v. J.R.B.***, 303 A.3d 456, 459 (Pa. Super. 2023) (citation omitted).

Notably, "the purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***T.K. v. A.Z.***, 157 A.3d 974, 976 (Pa. Super. 2017) (brackets and citation omitted).

The trial court found abuse under subsection 6102(a)(5). In relevant part, section 6102(a) states:

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> …
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S. §6102(a)(5).[6] Actual physical harm is not required before a PFA petition may be granted. ***See Fonner v. Fonner***, 731 A.2d 160, 163 (Pa. Super. 1999).

Fernandez argues there was "insufficient evidence to prove that Bhatia was in reasonable fear of bodily injury. She did not testify that she feared

---

[6] "Family or household members" includes former sexual or intimate partners and Fernandez does not dispute that he qualifies as a family or household member as he was in a prior relationship with Bhatia. ***See*** Appellant's Brief, at 5; 23 Pa.C.S. § 6102(a).

Fernandez would inflict bodily injury or harm her in any manner." Appellant's Brief, at 10. We disagree. Bhatia testified that she "was not in a good state of mind" after she received the call from Mcanally on January 18, 2023, where he described Fernandez entering her apartment. N.T. Hearing, 6/1/23, at 16. Further, she explained she felt scared and violated after Fernandez repeatedly texted and emailed her and showed up unannounced at her apartment complex in August 2022. *See id.* at 21. Finally, she told the trial court that she "just want[s] to feel safer at the end of this[.] … I've suffered a lot through the relationship. It was a lot. I had to undergo therapy and could not live my regular life after everything, and I just wish he would let it go for God's sake." *Id.* at 24.

Part of her concern came from Fernandez's use of a knife to threaten harm to himself. *See id.* at 23. While she conceded she was more concerned about his safety at that point, she did note that it made her feel that he could use a knife against someone else in a fit of rage. *See id.* at 24. Most concerning, however, is Mcanally's testimony to seeing Fernandez, who returned Bhatia's apartment key after their breakup, use a key to enter Bhatia's apartment when she was not home. *See id.* at 33-34. It is reasonable for one to fear for their safety when an uninvited guest uses a key they should not have to enter their home. This intrusive incident made Bhatia change the locks to her apartment.

As the trial court aptly explained:

The court found [Bhatia's] fear of [Fernandez] to be reasonable. The PFA Act was enacted to prevent future harm. [Bhatia's] and Mr. Mcanally's credible testimony concerning [Fernandez's] unauthorized entry to [Bhatia's] apartment more than six months after the parties' breakup, along with [Bhatia's] additional testimony, demonstrated by a preponderance of the evidence that a final order was necessary to prevent future harm.

Notably, [Fernandez's] testimony was not credible. In fact, evidence [Fernandez] introduced to show he was not at [Bhatia's] apartment on the date of the January incident put [Fernandez] at/near [Bhatia's] apartment. [Fernandez] wanted the court to believe that [he] just so happened to drive across the city of Philadelphia to get his car inspected at a place that just so happened to be near [Bhatia's] apartment *on the same date* that just so happened to be the date [Bhatia's] witness saw [Fernandez] enter [Bhatia's] apartment without [Bhatia's] permission. [Fernandez's] own physical evidence in turn corroborated [Bhatia's] case.

Trial Court Opinion, 9/18/23, at 15 (emphasis in original).

We agree. There are no magic words that a PFA petitioner must utter to obtain a PFA. **See T.K.**, 157 A.3d at 978 (finding that, although the petitioner never said that she was in fear of her abuser, there was sufficient evidence to find she was in reasonable fear of bodily injury). The circumstances here show Bhatia was in reasonable fear of bodily injury as Fernandez's actions were escalating. By his own admission, he continued to text and email her after she cut all contact with him. **See** N.T. Hearing, 6/1/23, at 53. He also admitted to going to her apartment complex uninvited to sit in the parking lot. **See id.** He then entered her apartment, using a key that Bhatia was unaware he had, but retreated when he saw Mcanally inside. **See id.** at 34. The incidents described, along with Bhatia's concern for her safety, were sufficient to grant the PFA.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/20/2024