J-A27032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOANNA HARRIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL HERTZ | : | |
| | : | |
| Appellant | : | No. 137 MDA 2024 |

Appeal from the Order Entered December 22, 2023
In the Court of Common Pleas of York County Civil Division at No(s):
2023-FC-002595-12

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.:        **FILED: DECEMBER 27, 2024**

Michael Hertz appeals from the order entered against him pursuant to the Protection from Abuse (PFA) Act, 23 Pa.C.S. §§ 6101–6122.  He argues that the evidence was insufficient to establish that he abused the plaintiff, Joanna Harris.  We affirm.

At a hearing on December 22, 2023, Harris testified about a series of incidents over the course of her relationship with Hertz in 2023, each of which placed her in fear.  First, in May (or April) of that year, Hertz grabbed Harris' gun safe and tried to access it "so he could blow his brains out."  Harris testified that Hertz had not made any threats towards her in this incident, and she agreed that her children were not home at the time.

Second, in August, Hertz choked Harris, leaving bruises on her neck. Harris agreed on cross-examination that she did not contact the police, she did not have photographs of the bruises, and no one saw the bruises.

Furthermore, Harris admitted that she continued her relationship with Hertz by purchasing a house and going on vacation together. She explained over objection that she stayed with Hertz as part of the "cycle of abuse."

Third, in October, Hertz made threats during a verbal altercation. Harris had tried to end the relationship and told Hertz to live in the finished basement until he vacated the house. Harris testified that Hertz "said that he was not going to do that and he would come after me with everything that he had. He would ruin my life. He would kill me." Harris acknowledged that the following month, she took a trip to Mexico with Hertz.

Fourth, in December, Hertz damaged Harris' older son's bedroom door. The next day, Hertz told Harris that he was leaving and taking the dog. Hertz did not leave. On cross-examination, Harris agreed to sending numerous text messages expressing her love and plans together. However, Harris disagreed that the days when she sent the text messages were good.

> [T]here were some text messages where I respond in kind because if I don't, if I didn't, who knew what would be to come. I knew that out of the many times I had asked him to leave the house, tried to end the relationship, he told me that the only way he would leave that house is in the back of a cop car or a casket. He told me that he would sooner watch the life drain out of my four-year-old's eyes than be associated with a whore.

N.T., 12/22/23, at 24–25.

At the hearing, Hertz introduced a recording in which Harris admitted to slapping Hertz and telling him that she was not letting him leave. Hertz testified, denying the incidents that Harris had described. Specifically, Hertz stated that he had not grabbed the gun safe or threatened to kill himself in

May.  Hertz denied ever choking Harris.  Hertz testified that he had never been physical with Harris.  Hertz explained that he hit Harris' son's door because Harris asked him to open it.  Hertz denied threatening Harris or her son.

The trial court granted a one-year no-contact PFA order to protect Harris.  Hertz timely appealed.  Hertz and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Hertz contends on appeal that the evidence was insufficient to support a finding that he abused Harris, even if we accept the trial court's determination that Harris was credible.  In his argument, Hertz challenges the trial court's failure to consider Harris' admission to slapping him, Harris' continued contact with Hertz despite claiming to be in fear of injury, and Hertz's own denial of abusing Harris.

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting [the petitioner, as the prevailing party below,] the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence.  This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

*K.B. v. Tinsley*, 208 A.3d 123, 128 (Pa. Super. 2019) (quoting *Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999)).

The PFA Act defines abuse between people with a qualifying relationship in five ways, three of which the trial court found applicable to this case:

> (1)  Attempting to cause or intentionally, knowingly or recklessly causing bodily injury [or] serious bodily injury . . . .

(2) Placing another in reasonable fear of imminent serious bodily injury.

\*     \*     \*

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S. § 6102(a); *see* Trial Court Opinion, 3/20/24, at 3.

We will limit our analysis to the fifth type of abuse in Section 6102(a), which requires the plaintiff to prove that the defendant knowingly engaged in a course of conduct or repeatedly committed acts that placed her "in reasonable fear of bodily injury." *K.B.*, 208 A.3d at 128. A "course of conduct" is "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." 18 Pa.C.S. §§ 2709(f), 2709.1(f); *see* 23 Pa.C.S. 6102(b) (referencing the Crimes Code for terms undefined in the PFA Act). A course of conduct may encompass different abusive acts during the length of a relationship. *See, e.g.*, *Diaz v. Nabiyev*, 235 A.3d 1270, 1274 (Pa. Super. 2020) (affirming a PFA order based on three incidents over ten months).

Notably, in the fifth definition of abuse, the statute does not require the injury feared to be "imminent." While physical contact and actual injury may be relevant considerations to determine whether a plaintiff is in reasonable fear of injury, the Act does not require proof of physical violence. *Cf. Fonner*, 731 A.2d at 163 (analyzing the second definition of abuse above). Additionally, "a PFA petitioner is not required to file a police report, nor is it

necessary for her to introduce medical evidence of an injury." **Custer v. Cochran**, 933 A.2d 1050, 1058 (Pa. Super. 2007) (*en banc*) (citing **Hood– O'Hara v. Wills**, 873 A.2d 757, 761 (Pa. Super. 2005)). As the trial court's objective is to determine whether the plaintiff is in reasonable fear of bodily injury, the defendant's own intent "is of no moment." **Buchalter v. Buchalter**, 959 A.2d 1260, 1263 (Pa. Super. 2008). Thus, evidence that a defendant made threats to harm himself may be evidence a plaintiff's reasonable fear that he could harm her. **Bhatia v. Fernandez**, 319 A.3d 517, 520 (Pa. Super. 2024).

Here, the evidence was sufficient to prove that Hertz knowingly engaged in a course of conduct or repeatedly committed acts toward Harris that placed her in reasonable fear of bodily injury. The series of incidents in the parties' relationship constitutes a course of conduct, even though each incident was different. **See Diaz**, **supra**. Furthermore, the severity of Hertz's actions supports a finding that Harris' asserted fear of bodily injury was reasonable. According to Harris, Hertz threatened to kill himself with Harris' gun, choked her, and threatened to come at her, ruin her life, and kill her. Despite the lack of corroboration, the trial court was free to credit Harris' testimony. **Custer**, **supra**. Although Harris admitted to staying with Hertz during 2023 and traveling with him, she explained that this was part of the cycle of abuse and stated that she responded to Hertz's text messages out of fear. The trial court could accept this explanation and still find Harris' fear to be reasonable. Finally, as the trial court noted, Harris' acknowledgement of slapping Hertz

and preventing him from leaving the house "do not negate" Hertz's own actions, which meet the definition of abuse. Trial Court Opinion, 3/20/24, at 4. Because we find the evidence sufficient under the fifth definition of abuse under Section 6102(a), we need not consider whether it is also sufficient under the first and second definitions. We affirm the order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/27/2024