J-S03018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AMANDA EVY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD KUMPF | : | |
| | : | |
| Appellant | : | No. 1085 WDA 2024 |

Appeal from the Order Entered August 8, 2024
In the Court of Common Pleas of Washington County
Civil Division at No(s):  AA-2024-04247

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED: February 7, 2025**

Donald Kumpf appeals from the order granting Amanda Evy's ("Evy") protection from abuse act ("PFA") petition on behalf of her and her minor children, K.S., W.E., and D.K. (collectively, "the children").[1]  We affirm.

Kumpf is Evy's ex-boyfriend and the father of one of her three children. In July 2024, Evy filed a PFA petition alleging Kumpf became enraged when she told him she planned to take the children on a trip to Virginia, screamed at her at the top of his lungs, called her a whore and told her she could not take the children on the trip if the car did not work.  Evy alleged the statement was threatening because Kumpf is a mechanic capable of sabotaging a car. **See** PFA Petition, 7/19/24, at 2 (unnumbered).  The petition also alleged

---

[1] **See** 23 Pa.C.S.A. §§ 6102-6122.

Kumpf had thrown things at Evy and pinned her and the children against the wall on prior occasions. *See id*. at 2-3.

The court granted a temporary PFA and promptly held a hearing on the petition at which twelve-year-old K.S. testified Kumpf had lived with Evy and the children until two weeks before. *See* N.T., 7/29/24, at 5-8. K.S. testified about an incident when Kumpf screamed at her for not doing the dishes "right" and pinned her against a wall with his hands, preventing her from moving. *See id*. at 8-9. K.S. testified Kumpf had pinned her to the wall on a previous occasion and threatened to take the contents of her bedroom. *See id*. at 9-10. K.S. testified Kumpf pinned Evy against the wall while she was holding her infant, and that a couple of times, he shoved the infant to the ground and screamed at her. *See id*. at 11. K.S. testified when Kumpf yelled she feared for Evy, herself, and her siblings. *See id*. at 12.

Evy testified on an evening in July 2024 when Kumpf was staying in the house, she told him she planned to take the children on a weeklong trip to Virginia. *See id*. at 17. Kumpf told her she could not do so and threatened to make her life "a living hell." *See id*. at 17-18. Kumpf's eyes were bulging, in a manner Evy described as "terrifying" and he screamed at the top of his lungs he would live with her until their child was eighteen years old. *See id*. at 18. Kumpf, a licensed mechanic, told Evy she could not go to Virginia if her car was not working; he had previously disassembled her truck without permission. *See id*. at 19, 39.

Evy testified that a month before the incident, she found a little, clear baggie with white residue in her dryer and had found similar baggies in the basement connected to the garage where Kumpf worked when he lived in the house. *See id*. at 20-23. She also testified Kumpf stayed awake continuously for days. *See id*. at 23-24. Evy testified Kumpf had unpredictable mood swings and had chased the children down the hallway, yelling and screaming, and that such behavior caused her to fear for herself and the children. *See id*. at 25, 27. Evy testified that at least fifteen or twenty times in the previous year, Kumpf had pinned her to the wall with his hands while screaming into her face from an inch away, holding her wrists on a couple of occasions. *See id*. at 26, 35. She also testified Kumpf twice pinned her against the wall while she held their two-year-old child, and on one occasion threw the child to the ground. *See id*. at 27-28. On a previous occasion, Kumpf twisted her arm. *See id*. at 35. Donna Lee Korba, Evy's mother, testified she had seen Kumpf pin Evy to the wall "a couple of times." *See id*. at 41-43.

Kumpf testified he told Evy he would make her life miserable when she told him she would be seeking child support. *See id*. at 47. He denied ever threatening her with physical harm, pinning her or the children to the wall, or forcefully putting the two-year-old down. *See id*. at 51-52, 55. Charlene Kumpf, Kumpf's mother, testified Evy's house was too cluttered for Kumpf to pin her to a wall. *See id*. at 66-68. She testified K.S. has a habit of lying and Evy has lied to her. *See id*. at 68-71.

After hearing the evidence, the court found credible evidence of abuse and the threat of abuse that would put a reasonable person in fear of bodily injury and granted the PFA for three years, while permitting Kumpf weekly visitation with his daughter. *See id*. at 82-84. The court amended the order in August to clarify custody-related issues. Kumpf filed a timely notice of appeal and he and the court complied with Pa.R.A.P. 1925.

On appeal, Kumpf presents the following issue for our review:

> Was the evidence quantitively and/or qualitatively insufficient to demonstrate that Kumpf engaged in any "abuse" as defined in the [PFA]?

Kumpf's Brief at 4.

We review a PFA appeal to evaluate whether the trial court abused its discretion or misapplied the law. *See Mescanti v. Mescanti*, 956 A.2d 1017, 1019 (Pa. Super. 2008). As this Court recently explained, the PFA does not concern criminal liability and requires a petitioner to establish abuse by only a preponderance, *i.e.*, enough to tip a scale slightly. *See Bhatia v. Fernandez*, 319 A.3d 517, 520 (Pa. Super. 2024). This Court views the evidence in the light most favorable to the prevailing petitioner in assessing the sufficiency of the evidence and defers to the credibility determinations of the trial court. *See B.K.P. v. J.R.B.*, 303 A.3d 456, 459 (Pa. Super. 2023). The PFA seeks to protect domestic abuse victims from their abusers, "with the primary goal of *advance prevention* of physical and sexual abuse." *T.K. v.*

***A.Z.***, 157 A.3d 974, 976 (Pa. Super. 2017) (citation omitted, emphasis added).

> The PFA defines abuse, *inter alia*, as:
>
> The occurrence of one or more of the following acts between . . . sexual or intimate partners . . .
>
> * * * * *
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S.A. § 6102(a)(5). Abuse may be found under the PFA without the infliction of actual physical harm. ***See Bhatia***, 319 A.3d at 521.

Kumpf argues there is no evidence he struck anyone or caused serious bodily injury, placed anyone in reasonable fear of imminent serious bodily injury, falsely imprisoned anyone, physically abused anyone, or engaged in a course of conduct placing Evy or the children in reasonable fear of injury. ***See*** Kumpf's Brief at 15-27 (discussing the five definitions of abuse in the PFA). He further asserts, "[g]enerally, an allegation of pervasive stalking or following the victim in connection with threats in necessary for a PFA to issue under subsection (5)." Kumpf's Brief at 25 (citing cases). Kumpf asserts he did not follow or stalk Evy and, moreover, the court failed to identify a course of conduct that would produce a reasonable fear of bodily injury. ***See id***. at 25-27. Finally, Kumpf argues the court incorrectly stated he threw objects at the victim, ignored the context of his threat to make the victim's life miserable,

and improperly relied on its conclusion that Kumpf's relationship with Evy was unhealthy. *See* Kumpf's Brief at 27-32.

The trial court found K.S. and Evy testified credibly, and their testimony established their reasonable fear of bodily injury. *See* Trial Court Opinion, 10/18/24, at 9-11.

We find no abuse of discretion or misapplication of law in the trial court's ruling. K.S.'s and Evy's credited testimony established that Kumpf repeatedly flew into rages, pinned K.S. and Evy to the wall while screaming at them, sometimes using his hands to pinion them, and that on at least one occasion he took a young child from Evy's arms and dropped the child to the floor. Additionally, Kumpf, a car mechanic, made a statement that reasonably suggested to Evy he could tamper with her car if she carried out her plan to take the children for a visit to Virginia. That evidence sufficiently established Kumpf committed abuse by creating a reasonable fear of bodily injury in Evy and K.S. *See* 23 Pa.C.S.A. § 6102(a)(5). *See Bhatia*, 319 A.3d at 521-522 (finding victim had a reasonable fear of physical injury even without physical injury). *See also T.K. v. A.Z.*, 157 A.3d at 976 (noting PFA's primary goal of advance prevention of physical violence); *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1263 (Pa. Super. 2008) (stating the intent of the accused abuser "is of no moment," the relevant inquiry is the reasonableness of the victim's fear). Kumpf's assertion a PFA "generally" requires persistent stalking or

following contradicts the definition of abuse under 23 Pa.C.S.A. § 6012(a)(5), which has no such requirement.[2]

 Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

2/7/2025

---

[2] Although Kumpf is correct the record does not reflect he threw things at the victim, the credited evidence amply supports the trial court's finding of abuse. That the court referred to the relationship as "unhealthy" does not establish the court employed the wrong legal standard for finding abuse.