J-A04035-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KATHERINE JIMENEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY THOMAS-ROANE | : | |
| | : | |
| Appellant | : | No. 511 MDA 2025 |

Appeal from the Order Entered March 6, 2025
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
202502025

BEFORE:  PANELLA, P.J.E., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                **FILED: MARCH 30, 2026**

Timothy Thomas-Roane ("Thomas-Roane") appeals from the order entered in the Luzerne County Court of Common Pleas, granting a final protection from abuse[1] ("PFA") order against him, and in favor of his estranged wife Katherine Jimenez ("Jimenez").  We affirm.

Thomas-Roane and Jimenez, who share two minor children, separated in March 2024.  Per a custody order, Jimenez had primary physical custody and Thomas-Roane had partial physical custody, consisting of visits every other weekend.  On February 12, 2025, Thomas-Roane filed a PFA petition against Jimenez.  On February 18, 2025, Jimenez filed a PFA petition against Thomas-Roane.[2]

---

[1] *See* Protection from Abuse Act, 23 Pa.C.S.A. §§ 6101-6122.

[2] Jimenez initially sought PFA orders in favor of their two children as well. However, she withdrew their petitions on the day of the PFA hearing.

On March 6, 2025, the trial court held a PFA hearing to address both petitions. Jimenez and Thomas-Roane both testified in support of their petitions. Jimenez testified that she and Thomas-Roane had been in a romantic relationship since 2006, when she was fifteen years old and he was nineteen years old. He began physically abusing her when she turned eighteen. She recounted multiple instances of physical abuse over the years, including slapping, choking, spitting, and hair pulling. Jimenez recollected, "One time I threw up, and he took the covers and covered me with the throw up. But according to him, I have mental health issues, which I don't." N.T., 3/6/25, at 26. She testified that in January 2021, Thomas-Roane arrived home intoxicated and raped her. Afterwards, he threatened to kill himself because she wanted to go upstairs alone. *See id*. at 28.

Jimenez testified that she then filed a PFA petition against Thomas-Roane in August 2021, but later withdrew it, explaining "he manipulated [her] into dropping the PFA." *Id*. at 23. He "kicked [her] out of the house in 2021 when [she] called the" police and again after a house fire in 2023. *Id*. at 22, 29. When Jimenez moved out after the fire, Thomas-Roane threatened to "go live on social media and air [her] out." *Id*. at 29. He told her that he would have his lawyer "get custody, 100 percent . . . on the grounds of [her] mental health." *Id*. Shortly thereafter, Jimenez learned from a co-worker that Thomas-Roane had accused her of having an affair at work, an accusatory pattern that began when she was fifteen years old.

Jimenez denied being the aggressor and stated that she bit and pushed Thomas-Roane only in self-defense when he grabbed her or her things. **See** N.T., 3/6/25, at 24, 26-27. She testified that she was "terrified" of Thomas-Roane. **Id**. at 31. She explained why she filed the instant PFA petition after he filed one against her:

> Because then . . . if he filed a PFA against me, then my life is in danger. Like, he can come by me, but I can't come by him. That's the way I understood it. So if he's getting a PFA against me, the person who he's raped, like, why shouldn't I get one against him?

**Id**. at 34.

Thomas-Roane testified that he filed a PFA petition after Jimenez approached him at their child's basketball game "and said, [W]atch, you're going to learn[,] and took her phone and hit [him] in the leg." N.T., 3/6/25, at 7-8. He stated that Jimenez "[has] been very violent against [him] in the past dozens and dozens of times. She actually has caused [him] to bleed on multiple occasions." **Id**. at 8. He entered five photographs into evidence that allegedly showed his injuries from Jimenez's attacks. **See id.** at 18. Thomas-Roane testified that Jimenez "has pretty much been trying to extort [him] out of the insurance money that [he] received for a house fire." **Id**. at 6. He described Jimenez as having "mental health issues." **Id**. at 35.

Thomas-Roane denied raping Jimenez and dismissed her allegations as "all theatrics to try to get [him] in trouble because she wants what she wants." **Id**. at 35. On cross-examination, he read aloud a text he sent to Jimenez that stated, "I apologize for trying to have sex with you and not realizing you didn't

want to." *Id.* at 37. Thomas-Roane testified that this text was in reference to a consensual sexual interaction where "[i]t was maybe a miscommunication," and he again denied raping her. *Id.* at 38. He further denied ever striking Jimenez, stating, "I've never physically put my hands on her. It's always been out of restraint." *Id*. at 36.

At the conclusion of the hearing, the trial court granted Jimenez's PFA petition and entered a final PFA order against Thomas-Roane. The trial court dismissed Thomas-Roane's PFA petition, finding his testimony not credible and therefore he did not meet the criteria for protection under the PFA Act. *See* N.T., 3/6/25, at 40.

Thomas-Roane filed a timely notice of appeal. On April 29, 2025, the trial court ordered him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within twenty-one days. Thomas-Roane filed a statement on May 21, 2025, one day after the twenty-one day time period elapsed. The trial court has issued an opinion.

Thomas-Roane raises the following issues for our review:

(1)   Did the [trial court] err in issuing a [PFA] order against [Thomas-Roane] when the evidence as presented at trial was neither sufficient [nor] credible and therefore did not support an issuance of the PFA order?

(2)   Did the [trial court] err and abuse its discretion where the trial court's decision was against the weight of the evidence as it was not supported by the record?

(3)   Did the [trial court] err and abuse its discretion when it expanded and misapplied the [PFA] when it issued the PFA order against [Thomas-Roane]?

- 4 -

Thomas-Roane's Brief at 3 (unnecessary capitalization omitted).[3]

As a threshold matter, we review whether Thomas-Roane's untimely Rule 1925(b) statement waived all issues on appeal. *See Commonwealth v. Burton*, 973 A.3d 428, 432 (Pa. Super. 2009) (holding that the failure to file a timely Rule 1925(b) statement results in waiver of all claims on appeal). This Court has held, however, that "[i]t would be inequitable to deem issues waived on appeal due to the untimely filing of a 1925(b) statement where the trial court's order to file the statement does not comport with the requirements of Rule 1925(b)." *Linn v. Perotti*, 308 A.3d 885, 888 (Pa. Super. 2024) (citation omitted). Pursuant to Rule 1925(b)(3)(iii), the order must include "both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement." Pa.R.A.P. 1925(b)(3)(iii). Here, the trial court's Rule 1925(b) order omitted this required information. We therefore decline to find waiver on the basis of the untimely Rule 1925(b) filing.

Furthermore, we note that Thomas-Roane's Rule 1925(b) statement spans six pages and sets forth twenty-three numbered paragraphs. Paragraphs two through twenty-three identified no issues; instead, Thomas-Roane cites the PFA Act and summarizes the parties' arguments. The trial

---

[3] In Thomas-Roane's brief, under "Order in Question," he refers only to the issuance of the PFA order against him. Accordingly, we discern that Thomas-Roane appeals only from the issuance of the PFA order against him, and not the trial court's dismissal of his PFA petition against Jimenez.

court opined that the issues raised in Thomas-Roane's 1925(b) statement "do not comply with the Rules of Appellate [P]rocedure. They do not state an issue or error. They seem to be an argument of counsel to the various protections allotted in the PFA. Some were not even discussed or mentioned at the PFA hearing." Trial Court Opinion, 7/2/25, at 17 (unnecessary capitalization omitted).

We remind counsel that Pa.R.A.P. 1925(b)(4)(ii) and (iv) require that the statement "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge" and "not be redundant or provide lengthy explanations as to any error." Pa.R.A.P. 1925(b)(4)(ii), (iv). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). Since we can discern the gist of Thomas-Roane's issues and the trial court addressed them in its opinion, we overlook the deficiencies of the statement.

Finally, we note that throughout his brief, Thomas-Roane conflates the sufficiency of the evidence and weight of the evidence. "[T]he distinction between these two challenges is critical." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000) (citations omitted). "A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a

reasonable doubt[,]" or in the matter of a PFA order, by the preponderance of the evidence. *Id*. at 319; *see also Bhatia v. Fernandez*, 319 A.3d 517, 520 (Pa. Super. 2024) (citation omitted). "[A] sufficiency of the evidence review ***does not*** include an assessment of credibility of testimony." ***Commonwealth v. Juray***, 275 A.3d 1037, 1043 (Pa. Super. 2022) (citation omitted) (emphasis added). In contrast, a weight of the evidence claim "concedes that there is sufficient evidence to sustain the verdict" and instead challenges the fact-finder's decision to "credit[] a victim's version of events over that of" the appellants. ***Widmer***, 744 A.2d at 751 (citation omitted); *see also Juray*, 275 A.3d at 1043 (citation omitted).

Thomas-Roane raises both sufficiency of the evidence and weight arguments across all three issues. Additionally, in his third issue, where he claims the trial court "expanded and misapplied the [PFA] [A]ct," Thomas-Roane does not argue that the trial court misinterpreted the statute. Thomas-Roane's Brief at 3. Instead, he raises additional arguments challenging the sufficiency and weight of the evidence. Thus, for clarity, we consolidate Thomas-Roane's arguments into two issues, and address all of the sufficiency claims first, followed by all of the weight claims.

In his first issue, Thomas-Roane challenges the sufficiency of the evidence supporting the trial court's entry of a PFA order. He argues that Jimenez's allegations of abuse "were uncorroborated, lacked specificity, and were devoid of any concrete dates or identifiable incidents." Thomas-Roane's

Brief at 16. He avers that her "actions appear retaliatory in nature rather than rooted in legitimate concern for her safety." *Id*. at 17.

When reviewing an appeal from the issuance of a PFA order, we examine "the trial court's legal conclusions for an error of law or an abuse of discretion. The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." *K.B. v. Tinsley*, 208 A.3d 123, 127 (Pa. Super. 2019) (citation omitted)

> The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, enough to tip a scale slightly.

*Bhatia*, 319 A.3d at 520 (citation omitted).

> When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. This Court defers to the credibility determinations of the trial court as to the witnesses who appeared before it.

*K.B.*, 208 A.3d at 128 (citation omitted). "Because we cannot make factual determinations, we must accept the findings of the trial court that are supported by the evidence." *Medina v. Green*, 348 A.3d 1113, 1117 (Pa. Super. 2025) (citation omitted).

Under the PFA Act, a trial "court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children." 23 Pa.C.S.A. § 6108(a). The PFA Act defines "abuse," *inter alia*, as follows:

> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> * * * *
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S.A. § 6102(a)(1), (2), (5).

This Court has explained:

> In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of bodily injury. The intent of the alleged abuser is of no moment. Moreover, this Court has held that past acts are significant in determining the reasonableness of a PFA petitioner's fear. As the goal of the Act is to prevent physical and sexual abuse, a victim does not have to wait for physical or sexual abuse to occur for the Act to apply.

*K.B.*, 208 A.3d at 128 (citations and quotation marks omitted). "[A] PFA petitioner is not required to file a police report, nor is it necessary for her to introduce medical evidence of an injury. The petitioner's testimony is

- 9 -

sufficient if it is believed by the trial court." ***Custer v. Custer***, 933 A.2d 1050, 1058 (Pa. Super. 2007) (*en banc*) (citations omitted).

On appeal, Thomas-Roane argues that Jimenez "did not present any documented evidence of abuse; did not provide any pictures, police reports, medical records, witnesses, *etc.*, whereas [Thomas-Roane] presented to the [c]ourt documented proof of actual and real injuries to his face, head, and body."[4]  Thomas-Roane's Brief at 14-15.  He contends that Jimenez's stated reasons for filing her PFA "directly undermine[d] any claim of genuine fear or need for protection" and instead showed a "vindictive purpose."  ***Id***. at 17, 18.  He further avers that Jimenez's words and actions "[d]id not indicate that she demonstrated a reasonable fear of imminent . . . bodily injury concerning [Thomas-Roane]."  ***Id***. at 25.

> In its Rule 1925(a) opinion, the trial court reasoned:
>
> [Jimenez] testified in detail to a sexual assault that occurred in [January] 2021.  [Thomas-Roane] implies that due to the passage of time it is not applicable and asserts she did not present evidence.  The testimony of [Jimenez] as to the sexual assault was deemed credible.  The text message from [Thomas-Roane] to [Jimenez] apologizing for the attempted sexual assault was uncontested in its basic form.  This is evidence.  This was deemed credible evidence.  The testimony of [Thomas-Roane] and his accompanying exhibits and explanations to the exhibits . . . were not credible.  Accordingly, the credible evidence presented by [Jimenez] clearly supports the finding of a PFA order . . . .

Trial Court Opinion, 7/2/25, at 14-15.

---

[4] As noted above, however, Thomas-Roane does not raise any challenge to the order dismissing his petition for a PFA order against Jimenez.

The trial court further reasoned:

[Gonzalez] seems to argue that because he initiated a PFA against [Jimenez] that was ultimately denied by the [trial court], [Jimenez] should not be entitled to a PFA because she did not initiate the action and is therefore not fearful of him. This logic fails. [Jimenez] provided a detailed history of violence. She stated that when she received the PFA filed against her she again became fearful that her life was in danger. Her credible testimony illustrated that protection was warranted as detailed herein.

*Id*. at 13.

Viewing the evidence in the light most favorable to Jimenez, we conclude that the evidence was sufficient for the trial court to enter a PFA order against Thomas-Roane. *See K.B.*, 208 A.3d at 128. Jimenez testified in detail about multiple instances of abuse spanning more than a decade, including rape, physical assaults, and accusations of infidelity. She described instances of him spitting on her, wrapping her in a blanket covered with her own vomit, and threatening to humiliate her on social media. The trial court found her testimony credible and described her fear as "palpable." Trial Court Opinion, 7/2/25, at 12. The PFA Act does not impose a documentation requirement on a petitioner and a petitioner's testimony, if believed, suffices. *See Custer*, 933 A.3d at 1058. Therefore, the record supports the trial court's entry of a PFA order against Thomas-Raone. Accordingly, no relief is due on Thomas-Roane's first issue.

In his second issue, Thomas-Roane challenges the weight of the evidence, arguing that "the trial court's credibility determination was not supported by substantial evidence and included outright ignorance of the

parties' testimony, which constituted an abuse of discretion, warranting appellate intervention." Thomas-Roane's Brief at 19.

When reviewing an appeal from the issuance of a PFA order, "[t]his Court defers to the credibility determinations of the trial court as to witnesses who appeared before it." *K.B.*, 208 A.3d at 128. "[T]he credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super. 2019) (citation omitted). As such, this Court is "not entitled to re-weigh the evidence." *K.B.*, 208 A.3d at 129.

Thomas-Roane argues that "the trial court ignored any and all proof of injury to [him] and summarily determined his documented evidence and testimony as not credible." Thomas-Roane's Brief at 20. He further avers the trial court "misinterpret[ed]" his actions due to a failure "to fully grasp the cultural, social, or traumatic context in which [Thomas-Roane] made the statement that he 'never physically put his hands on her[,'] while stating that he did put his hands on her out of restraint." *Id*. at 21. He also claims that the trial court, "in raising the credibility of the parties, erred and ignored the very words of [Jimenez], wherein she clearly [told] the court her motivations and vindictive reasons for filing the February 18, 2025[] petition for a PFA." *Id*. at 23 (unnecessary capitalization omitted).

The trial court credited Jimenez's testimony, and rejected Thomas-Roane's testimony as inconsistent and incredible, reasoning:

[T]he [trial] court found the testimony of [Jimenez] to be credible. [She] testified to the current facts, a series of domestic violence over her life with [Thomas-Roane,] including rape, physical assault, spitting in her face[,] threats of violence to himself and [Jimenez], harassment as to her mental health, accusations of infidelity that he shared with her co-workers[,] all of which created a credible fear in [Jimenez]. The court found the testimony of [Jimenez] to be credible and her fear of [Thomas-Roane] to be palpable.

* * * *

[Thomas-Roane] denied being the aggressor and went so far as to say he never physically put his hands on [Jiminez]. Conversely, he followed up by admitting that he did put his hands on her out of restraint. His testimony was inconsistent and not credible.

In granting the order, the [trial] court determined the credibility of the testimony and the factors of the PFA Act in the issuance of the PFA against [Thomas-Roane]. Those factors as detailed in the credible multiple acts of violence, threats, harassment, and spitting on [Jimenez] as noted herein meet the PFA factors. Accordingly, the credible evidence presented by [Jimenez] clearly supports the finding of a PFA order. . . .

Trial Court Opinion, 7/22/25, at 12-13.

The trial court's entry of the PFA order against Thomas-Roane was not against the weight of the evidence. *See K.B.*, 208 A.3d at 128. The trial court heard testimony from both parties, and made a credibility determination in favor of Jimenez. This Court must "defer[] to the credibility determinations of the trial court as to witnesses who appeared before it" and cannot reweigh the evidence. *Id*. Accordingly, no relief is due on Thomas-Roane's second issue.

For the foregoing reasons, none of Thomas-Roane's claims merit relief.

We affirm the order issuing a PFA order against him and in favor of Jimenez.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/30/2026